## GLENS FALLS PORTLAND CEMENT CO. v. DELAWARE & HUDSON CO. et al.

### No. 173.

Circuit Court of Appeals, Second Circuit.

July 17, 1933.

H. T. Newcomb, Nathan Probst, Jr., and Thomas L. Ennis, all of New York City, for appellants.

Cohen, Gutman & Richter, of New York City (Julius Henry Cohen, Kenneth Dayton, and Burton A. Zorn, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The present suit, brought under section 16(2) of the Interstate Commerce Act (49

USCA § 16 (2), seeks to recover from three defendant railroad corporations damages suffered by the petitioner, hereafter referred to as the cement company, by reason of the collection from it of unreasonable and unlawful freight rates on shipments of cement during the two years preceding August 27, 1926. The cement company manufactured its product at Glens Falls, N. Y., and shipped it by railroad to various destinations in New England. Its shipments moved from Glens Falls to Sidney, N. Y., over the lines of the Delaware & Hudson Company, from Sidney to Campbell Hall, N. Y., over the New York, Ontario & Western, and from Campbell Hall to New England destinations over the New York, New Haven & Hartford. The three railroad companies whose lines comprised this route were defendants below, and are appellants here. It is called the Sidney route. There was another and shorter route from Glens Falls to all the points of destination via Mechanicville, N. Y., over the Delaware & Hudson, the Boston & Maine (not a party to this action), and the New Haven. But no joint freight rates for cement were established over the Mechanicville route during the period in question; all the cement company's shipments going by way of Sidney. In August, 1926, the cement company filed a complaint with the Interstate Commerce Commission against the present defendants and others in which it charged (1) unfair discrimination in rates between Glens Falls and certain favored places within the Hudson and Lehigh districts where were located other cement manufacturers with whom the complainant competed; (2) unreasonable routing because the Mechanicville route was not used; and (3) the collection of unreasonable rates from the complainant during the preceding two years. It asked that the Commission establish just and reasonable rates, direct the establishment of joint rates via the Mechanicville route, and make a reparation order awarding damages. This proceeding was consolidated with others by which other complainants sought lower rates and a revised rate system for the entire Hudson district. No reparation order was sought in the other proceedings. On June 3, 1929, the Commission rendered its report and decision covering all these proceedings (see New England Cement Rates, 155 I. C. C. 601), and this was served on the present defendants. Subsequently on August 14, 1930, a reparation order was entered awarding the cement company the sum of $12,558.63 with interest. A correction which did not affect the amount or date of payment, was made in this order nunc pro tunc on November 14, 1930. There is a dispute whether the reparation order and corrected order were served upon the Delaware & Hudson Company. The other two defendants admit service. The order was not complied with, and this suit followed in December, 1930.

At the trial the cement company introduced copies of the Commission's report and reparation order, made proof of service of the same, and rested after certain data necessary to determine the amount of interest due, if the petitioner was entitled to judgment, had been stipulated. The defendants then offered expert testimony as to the reasonableness of the rates in question. An objection to such evidence being sustained, and no further proof being offered, a verdict was directed for the petitioner in the sum of $17,828.78. To this attorneys' fees were added by the court in the amount of $4,000, and costs in the amount of $30, making the judgment appealed from $21,858.78. The appeal also challenges an interlocutory order by which affirmative defenses pleaded by the defendants were stricken out. See (D. C.) 55 F.(2d) 971.

Upon this appeal the principal point of controversy is whether the defendants are entitled to a trial de novo on the question of the reasonableness of the rates they collected from the cement company. But before considering that issue it will be convenient to dispose of the several special defenses presented by the defendants in their answers and stricken out by the District Court as insufficient in law.

The Delaware & Hudson Company ceased to be a common carrier on April 1, 1930, on which date it conveyed its railroad properties to the Delaware & Hudson Railroad Company in a proceeding reported in 158 I. C. C. 615. Since it was no longer a carrier, the Commission was without jurisdiction, it contends, to enter against it the reparation order of August 14, 1930. These facts it set up in its answer as a special defense. On the same ground it objected at the trial to the admission in evidence of the reparation order, and moved to dismiss the petition for the reason that the District Court had no jurisdiction over it in a suit based on the Commission's void order. These contentions were decided adversely to it below. We think they were rightly decided. The findings of fact which established the liability of the Delaware & Hudson Company had been made on June 3, 1929, before it ceased to be a carrier. The reparation order merely fixed the amount of the damages awarded. Even without specific

statutory authority we should agree, for the reasons given below [55 F.(2d) 971, 980–981], that the Commission had jurisdiction to make it; but the matter seems to be put beyond controversy by section 42 of the Act (49 USCA § 42), which permits persons in interest other than carriers to be made parties and subjects them to orders of the Commission.

■ It is further contended that the reparation order and corrected order were never served upon the Delaware & Hudson Company. Section 16 (5) of the Act (49 USCA § 16 (5) provides that:

"Every order of the commission shall be forthwith served upon the designated agent of the carrier in the city of Washington or in such other manner as may be provided by law."

49 USCA § 50 requires every carrier to designate an agent in Washington, and provides that, in default of such designation, service may be made "by posting such notice or process in the office of the secretary of the Interstate Commerce Commission." Prior to April 1, 1930, the Delaware & Hudson Company had a designated agent in Washington, but when it ceased to be a carrier the authority of such agent was revoked and notice of the revocation filed with the Commission. The same person was designated the agent for the Delaware & Hudson Railroad Company. The reparation order and corrected order were served on this person after revocation of her authority as agent of the Delaware & Hudson Company. Technically she was no longer this defendant's agent, and the statute was not followed; but like technicality points to the conclusion that the statute did not apply because this defendant was no longer a carrier. Apparently no express provision is made for service upon a noncarrier party. 49 USCA § 42. Actual notice received in season would seem to be sufficient notice to such parties. Moreover, the reparation order and corrected order were posted in the office of the secretary of the Commission. While the secretary's certificate states that service was made in this manner upon Central New England Railroad Company (a defendant against whom the suit was dismissed before trial), it is not apparent why this posting would not also constitute service upon the Delaware & Hudson Company under section 50. But in any event the fact that the statute gave an alternative method to service upon the designated agent would indicate that the particular method of notifying the designated agent was not jurisdictional. Since this defendant was properly served with the initial process and the Commission's

report, actual notice of the formal order should be enough. The analogy of an injunction which binds a defendant, however he learns of it, is persuasive.

■ The Ontario & Western pleaded as a separate special defense that the proximate cause of the damage to the cement company was the failure of the other railroad companies to open the shorter Mechanicville route, a matter with which the Ontario & Western had nothing to do, as no part of its lines was embraced within that route. While it is true that the complaint filed with the Interstate Commerce Commission complained, among other things, of the failure to open the Mechanicville route and prayed for the establishment of joint rates for transportation of cement via that route, the claim for reparation was based on the collection of unreasonable rates on shipments via Sidney. As we read the Commission's report, it was upon this theory that reparation was allowed. Besides finding that the failure to open the Mechanicville route was unreasonable and a violation of the act, the Commission made a finding that:

"The rates assailed in No. 18744 for transportation from Glens Falls to points on the New Haven, during two years prior to August 27, 1926, were unreasonable to the extent that they exceeded the rates established on April 12, 1927; that the complainant in that case made shipments during said period to which said rates were applied, and paid and bore the charges thereon; that it has been damaged thereby and is entitled to reparation to the basis of rates established effective on said April 12."

■ The rates thus referred to were for the long haul via Sidney, and reduced the previous charge of 20.5 cents to 17 cents so as to "equalize" the rates "from Howe's Cave and Glens Falls with those from Hudson and Alsen." The special defense now under consideration is based upon a false premise, and was properly stricken out. With the collection of unreasonable charges over the Sidney route the Ontario & Western was concerned, and each participant in the establishment of an unreasonable joint rate is jointly and severally liable as a tort-feasor. L. & N. R. R. v. Sloss-Sheffield S. & I. Co., 269 U. S. 217, 231–234, 46 S. Ct. 73, 70 L. Ed. 242; Lewis-Simas-Jones Co. v. So. Pac. Co., 283 U. S. 654, 660, 51 S. Ct. 592, 75 L. Ed. 1333.

■ It is urged by all the defendants that the District Court erred in overruling the third, fourth, fifth, and sixth affirmative defenses, which challenge the validity of the Commis-

sion's reparation order on the ground that it is not supported by adequate findings of fact. The objection was again urged against admission in evidence of the reparation order and the report of June 3, 1929, which was made a part of it. Section 14 of the act, 49 USCA § 14 (1), imposes upon the Commission, when it makes an investigation, the duty to file a written report which shall state its conclusions, "together with its decision, order, or requirement in the premises; and in case damages are awarded such report shall include the findings of fact on which the award is made." The character of the findings required were discussed in Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412, 426–428, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Mills v. Lehigh Valley R. R., 238 U. S. 473, 477–481, 35 S. Ct. 888, 59 L. Ed. 1414; see, also, Mellon v. World Pub. Co., 20 F.(2d) 613, 615–617 (C. C. A. 8). In the case at bar we think the report and order meet the tests laid down by these authorities.

It remains to consider the point chiefly controverted, namely, whether the defendants are entitled to have the jury determine the reasonableness of the rates on evidence presented to it upon the trial regardless of the evidence presented to the Commission.

The Interstate Commerce Act provides that all charges for service must be just and reasonable, and declares every unreasonable charge to be unlawful. Section 1 (5), 49 USCA § 1 (5). It imposes upon carriers liability for the full amount of damages sustained by any person in consequence of any violation of its provisions. Section 8, 49 USCA § 8. Any person claiming to be so damaged may either make complaint to the Commission or may bring suit for damages in a District Court. Section 9, 49 USCA § 9. Complaints to the Commission for reparation may be made under section 13 (1), 49 USCA § 13 (1), and, if damages are awarded, the Commission's report shall include the findings of fact upon which the award is made. Section 14(1), 49 USCA § 14(1). If the Commission shall determine that the complainant is entitled to damages, it shall make an order directing the carrier to pay him on or before a named day the sum awarded. Section 16 (1), 49 USCA § 16(1). If the order is not complied with, suit may be brought under section 16(2), 49 USCA § 16(2). This provides also that:

"Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated. * * * "

Paragraph 12 of section 16, 49 USCA § 16(12), prescribes the procedure for enforcement of "any order of the commission other than for the payment of money."

██ Relying upon the statutory declaration that the findings and order of the Commission shall be "prima facie evidence of the facts therein stated," and contending that to give them any greater effect would deprive the defendants of rights guaranteed by the Constitution, they argue that the judgment must be reversed because the court rejected proof on the issue of the reasonableness of the rates collected from the cement company. Verbally the argument based on the above-quoted language of section 16(2) is strong. But an equally strong argument can be based on section 9, 49 USCA § 9 (reinforced by section 22, 49 USCA § 22, as to the preservation of existing remedies), that a shipper may elect between complaining to the Commission and suing for damages in a court of law; yet it is clearly established that, if the dispute involves an administrative matter, such as the unreasonableness of an established rate, the shipper has no option, but must resort to the Commission. Tex. & Pac. Ry. Co. v. Abilene Cotton Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, is the pioneer case. Many of the subsequent authorities are cited and discussed in U. S. Navigation Co. v. Cunard S. S. Co., 50 F.(2d) 83 (C. C. A. 2), affirmed 284 U. S. 474, 52 S. Ct. 247, 76 L. Ed. 408. See, also, Baltimore & Ohio R. Co. v. Brady, 288 U. S. 448, 456, 53 S. Ct. 441, 77 L. Ed. 888. Similarly, despite the language of section 16(2), neither the shipper nor the carrier may attack the administrative decision except on the ground that there was no evidence before the Commission to support it. At least, such we understand to be the principle announced in an elaborate dictum in Mitchell Coal & Coke Co. v. Penn. R. R. Co., 230 U. S. 247, 33 S. Ct. 916, 57 L. Ed. 1472. At page 257 of 230 U. S., 33 S. Ct. 916, 921, 57 L. Ed. 1472, Mr. Justice Lamar said that, where the suit is based upon unreasonable charges or unreasonable practices, "the whole scope of the statute shows that it was intended that the Commission and not the courts should pass upon that administrative question," and upon the following page the opinion continues:

" * * * Such orders, so far as they are administrative, are conclusive, whether they relate to past or present rates, and can be given general and uniform operation, since

all shippers who have been or may be affected by the rate can take advantage of the ruling and avail themselves of the reparation order. They are quasi judicial and only prima facie correct in so far as they determine the fact and amount of damage,—as to which, since it involves the payment of money and taking of property, the carrier is, by § 16 of the act, given its day in court and the right to a judicial hearing ([March 2, 1889] 25 Stat. at L. 859, chap. 382, U. S. Comp. Stat. Supp. 1911, p. 1303)."

In South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co., 64 F. (2d) 419 (C. C. A. 4), the Mitchell Case is cited as authority for the proposition that the Commission's administrative finding, fixing the extent to which the rates charged were unreasonable, is binding upon the courts. Such also was the holding in Lehigh Valley R. Co. v. Meeker, 211 F. 785, 794 (C. C. A. 3), reversed on other grounds in 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691, but the lower federal courts are not in unanimity upon this question. Cf. Atchison, T. & S. F. Ry. Co. v. Spiller, 246 F. 1, 21 (C. C. A. 8), reversed on other grounds 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810; Blair v. Cleveland, C., C. & St. L. Ry. Co. (D. C. E. D. Ill.) 45 F. (2d) 792, 793.

It is conceded by the appellants' argument that the Commission's decision upon the reasonableness of rates is conclusive in establishing rates for the future, but they contend that there is a difference as to decision respecting the reasonableness of rates collected in the past. While expressions may be found in the opinions which imply that a reparation award involves a "quasi judicial" function as distinguished from the "quasi legislative" function of fixing rates in futuro, we do not think they are to be taken as overruling the above-quoted statement in the Mitchell opinion that administrative orders are conclusive "whether they relate to past or present rates." One of the latest reparation cases in the Supreme Court is Adams v. Mills, 286 U. S. 397, 52 S. Ct. 589, 76 L. Ed. 1184. This concerned the practice of charging an unloading charge at the stockyards. As we read the opinion, the court discusses the case on the assumption that the Commission's decision that the practice complained of was unlawful was conclusive, if supported by evidence before the Commission, and so says at page 410 of 286 U. S., 52 S. Ct. 589, 76 L. Ed. 1184.

The defendants were entitled to attack the Commission's administrative decision as unsupported by the evidence before the Commission, as was done in Spiller v. Atchison, T. & S. F. Ry. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810. But they did not do so. They sought only to introduce expert testimony to contradict the Commission's conclusion that the rates collected were unreasonable and hence unlawful. This, as we understand the law, they might not do. Accordingly the judgment appealed from must be affirmed.

■ The appellee asks that an additional counsel fee be allowed for services covering this appeal. Allowance of a reasonable attorney's fee, "if the petitioner shall finally prevail," is directed by section 16(2), 49 USCA § 16 (2). See Mills v. Lehigh Valley R. Co. (D. C.) 226 F. 812; Davis v. Parrington, 281 F. 10, 17 (C. C. A. 9). In view of the fee awarded by the District Court, we think a fee of $300 will be sufficient for services on appeal.

The judgment below is affirmed, with an attorney's fee in favor of the appellee in the sum of $300, to be taxed as part of its costs upon this appeal.