**NEW PROCESS GEAR CORPORATION,**
Plaintiff-Appellee,

v.

**The NEW YORK CENTRAL RAIL-
ROAD COMPANY,** Defendant-
Appellant.

**No. 41, Docket 24532.**

United States Court of Appeals
Second Circuit.

Argued Oct. 9 and 10, 1957.

Decided Nov. 8, 1957.

Rehearing Denied Jan. 15, 1958.

Harry Teichner, Brooklyn, N. Y., for plaintiff-appellee.

Gerald E. Dwyer, New York City (J. Edgar McDonald, New York City, on the brief), for defendant-appellant.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

MOORE, Circuit Judge.

This is an appeal by the defendant, The New York Central Railroad Company (referred to as the "Railroad") from a final judgment of $11,502.42 in favor of the plaintiff, the New Process Gear Corporation (referred to as "New Process") in an action to enforce an order of the Interstate Commerce Commission (referred to as the "Commission") awarding reparation to New Process in the sum of $6,550.81 for alleged overpayments on freight shipments made by New Process over the Railroad's lines from Syracuse, N. Y., to Detroit, Mich., during the period April 9, 1944 to August 21, 1947 plus interest, counsel fees and costs.

On June 8, 1950 New Process filed a complaint with the Commission which assailed the freight rates charged on carload shipments of automobile driving gear parts as unjust and unreasonable in violation of Sections 1 and 4 of the Interstate Commerce Act (49 U.S.C.A. § 1(5) and § 4).

The proceeding was heard by a Commission examiner who recommended that the Commission "should find that the rates charged have not been shown to have been unreasonable" and that the complaint should be dismissed. Exceptions were filed by New Process to the examiner's report and the matter was thereafter heard by Division 3 of the Commission. This Division rejected the report of the examiner and found that the rates charged on certain of the shipments were unreasonable and that New Process was entitled to reparation "in the amount of the difference between the charges paid and those which would have accrued on the basis herein found reasonable, with interest."

Thereafter the Railroad filed a petition for reconsideration, pointing out the alleged errors of the report of Division 3, which petition was denied by order of the Commission, dated May 17, 1954. Subsequently the Railroad sought leave to file a further petition for reopening and reconsideration, which leave was also denied by the Commission on February 7, 1955.

To enforce the Commission's order awarding reparation, New Process brought this action in the district court for the Southern District of New York (49 U.S.C.A. § 16(2)).

The complaint that the freight rates charged were unreasonable is based upon the fact that during the period of the shipments in question there existed a Commodity rate between Syracuse, N. Y., and Detroit, Mich., for the gear parts shipped by New Process of 37¢ per 100 pounds for a minimum weight of 30,000 pounds and a Class rate of 42¢ per 100 pounds subject to a minimum weight of 24,000 pounds. Both Commodity and Class rates were subsequently increased but these increases only affect the mathematics of the reparation calculations and not the principle involved.

Taking the two rates in effect between April 9, 1944 and June 30, 1946 when the Commodity and Class rates were 37¢ and 42¢ respectively, the Railroad, using the Commodity rate, would have received

$111 per car for a minimum weight of 30,000 pounds and 37¢ per 100 pounds for all weights above this minimum. Likewise, based upon a Class rate calculation of 42¢ per 100 pounds, the Railroad would have received $100.80 had 24,000 pounds been loaded at the 42¢ rate. A shipment of approximately 26,430 pounds at the 42¢ rate would have equaled the $111 amount at the 37¢ Commodity rate on the 30,000-pound minimum basis. Therefore, the only area in which New Process could have benefited by the application of the 42¢ Class rate would have been on shipments under 26,430 pounds. 2,355 shipments were made during the reparation period. 1,717 were over 26,430 pounds and, therefore, subject to the Commodity rate. The judgment is based upon the difference between the amount payable on the other 638 shipments at the 42¢ Class rate (whenever the amount would have been less than the 37¢ Commodity rate applied to the 30,000-pound minimum) and the amount actually charged based on the Commodity rate.

Division 3 of the Commission in its opinion justified its conclusion of unreasonableness by saying "A class rate based on the rating of a commodity in the governing classification is ordinarily the highest rate that may be deemed reasonable for that commodity. E. I. DuPont de Nemours & Co. v. Chicago, N. S. & M. R. Co., 258 I.C.C. 789, 794. A carload minimum weight must be considered as a part of a carload rate, and where the minimum weight in connection with a commodity rate results in higher charges than under a class rate with a lower minimum, there is a presumption of unreasonableness requiring special justification. Butte Fruit & Produce Co. v. Northern Pac. Ry. Co., 178 I.C.C. 370; Butler Bros. v. Ann Arbor R. Co., 253 I.C.C. 437."

The Railroad had argued that it had agreed to the 37¢, 30,000-pound minimum rate to meet motor truck competition threatened by New Process. However, Division 3 dismissed this argument peremptorily by saying "Prior agreement, however, is not determinative of the just, reasonable, and non-discriminatory character of a rate. See Ladd & Co. v. Gould Southwestern Ry. Co., 36 I.C.C. 179, 181."

The effect of the Commission's decision is to give the shipper, New Process, alternate rates despite the fact that in certain of its decisions it had said that the establishment of alternative bases was not generally desirable, although recognizing their reasonableness in special instances. The district court gave this effect to the Commission's decision, saying "What the Commission effectually did in this case was impose an alternate rate, something it had often protested it did not require as part of a fair rate basis. American Popcorn Company v. Atchison, T. & S. F. Ry. Co., 182 I.C.C. 230; Vacuum Cleaner Mfrs. Ass'n v. Atchison, T. & S. F. Ry. Co., 276 I.C.C. 783, 792."

The Railroad concedes, as it must (49 U.S.C.A. § 16(2) ), that the findings and order of the Commission shall be *prima facie* evidence of the facts therein stated, namely, that the rates charged were excessive and unlawful and that the Commission has primary jurisdiction over the question of reasonableness of rates. Its real dissatisfaction with the Commission's decision stems from the rejection of the Railroad's assertion that "The publication of a commodity rate automatically removes the application of a class rate, unless the tariff publishing the commodity rate specifically provides for its alternation with the class rate basis."

The fixing of rates and the determination of what rates are applicable are primarily functions of the Commission. Unless this Court is prepared to rule that the Commission has no power under any circumstances to recognize alternative rates in determining whether the rates charged are unreasonable, the conclusion of the Commission should be accepted (Glens Falls Portland C. Co. v. Delaware & Hudson Co., 2 Cir., 66 F.2d 490, certiorari denied 290 U.S. 697,

54 S.Ct. 132, 78 L.Ed. 599). The province of the appellate court was well defined in Virginian Ry. Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L.Ed. 463, as follows: "To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases, is beyond our province." Nor can this Court say as to the Commission's conclusion "that its finding is unsupported by evidence or without rational basis, or rests on an erroneous construction of the statute," Barringer & Co. v. United States, 319 U.S. 1, 6–7, 63 S.Ct. 967, 971, 87 L.Ed. 1171.

The Railroad cannot complain too seriously as a matter of equity. Two rates were published, one a Class rate and the other a Commodity rate. It accepted shipments at the lower Commodity rate for 30,000 pounds and up to avoid possible loss of its traffic to motor carriers. Its Class rate was available for shipments of 24,000 pounds and up. There was nothing in the record to indicate that New Process agreed not to ship any consignments of less than 30,000 pounds or not to take advantage of the published rate for the 24,000-pound minimum. Nor is the Railroad's argument helped by its mathematical speculations as to the savings to New Process had all the shipments been made at the Class rate because the shipper never agreed to use the Railroad's services at such a rate.

Upon appeal the Railroad, as appellant, asserts that there was no evidence before the Commission to sustain each of its findings and that it was entitled to a trial *de novo* before the district court. It also alleges error in the exclusion of evidence offered in the district court which had not been before the Commission.

■ The scope of review by the district court was whether there was substantial evidence supporting the findings of fact made by the Commission and whether the conclusions of the Commission were in accordance with the standards set by Congress (United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Mitchell Coal & Coke Co. v. Pennsylvania R. R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472; Glens Falls Portland C. Co. v. Delaware & Hudson Co., 2 Cir., 66 F.2d 490, certiorari denied 290 U.S. 697, 54 S.Ct. 132).

There was substantial evidence before the Commission upon which its conclusion as to unreasonableness was solidly based. Nor was the action of the district court in striking the evidence offered by the Railroad prejudicial to it because damages on the Commission's theory could not have been computed on the over-all average theory advanced by the Railroad. The Commission specifically limited the range of overcharge. Hypothetical Class rate charges on the 1,717 shipments could not have served as an offset to the reparation awarded.

■ The long-and-short haul provision of Section 4 and the reverse direction shipment presumption are not sufficiently material to be considered in any way determinative by the Commission or by the district court in reaching their conclusions. The possible inconsistency of the Commission in reaching different results in different cases is no basis for holding that the Commission must adopt one policy or the other.

The judgment below is affirmed with an attorney's fee in favor of the appellee in the sum of $1,000 as stipulated by the parties to be taxed as part of the costs upon this appeal in the event appellee prevailed.

On Petition for Rehearing

MOORE, Circuit Judge.

Defendant-appellant has petitioned for rehearing because it believe that this Court in its opinion, filed on November 8, 1957, failed to understand the applicable rate and tariff situation and that this Court assumed that a commodity rate applied to shipments of 30,000 pounds and up and a class rate applied

to shipments of lesser weights. The problem before this Court was whether the district court was correct in sustaining the Commission's findings and granting judgment for reparations. The Commission had found that "the charges assailed were unreasonable to the extent that they exceeded those which would have accrued at the corresponding class-40 rates subject to the minimum of 24,-000 pounds." In its petitions for modification and further hearing before the Commission appellant raised the same points now urged, namely, that the rate on the 638 carload shipments "must, in the absence of a finding of a dual or multiple basis of reasonable rates, be found equally reasonable with respect to the 1,710 other carload shipments"; that there was only one rate legally applicable, the commodity rate; and that there was no provision for the alternative application of class and commodity rates.

In deciding whether the rates charged on the 638 carloads were unreasonable the Commission applied as a measure for reparation the amounts which would have been payable if the class rate were in effect in contrast to the amounts payable on the commodity rate basis. This Court did not assume, as appellant states in its petition, that one rate (i. e., the commodity rate) applied to shipments of 30,000 pounds and up and another rate (i. e., the class rate) to 24,000 pounds and up. Nor did this Court decide that two rates, commodity and class, were available to New Process. The Commission, however, did find in fact that the rates were unreasonably high as to 638 carloads. As the district court pointed out, the Commission's "decision appears to be something of an innovation; it condemned a commodity rate only as it applies to low weight shipments and not its overall application." Its condemnation was merely incidental to its finding of unreasonableness which rested upon a belief that the commodity rate when applied to low weight shipments resulted in an unreasonably high per pound figure. Since such a holding was within the power and discretion of the Commission, its decision as to rates should not be disturbed unless unsupported by evidence.

The petition for a rehearing is denied.