**ATLANTIC COAST LINE RAILROAD COMPANY et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**No. 4771–Civ.–J.**

United States District Court
M. D. Florida,
Jacksonville Division.

Jan. 9, 1963.

Urchie B. Ellis, Richmond, Va., J. Edgar McDonald, New York City, and Phil C. Beverly, Jacksonville, Fla., for plaintiff Railroads.

Leonard S. Goodman and Isaac K. Hay, Washington, D. C., for defendant, Interstate Commerce Commission.

McRAE, District Judge.

## FINDINGS OF FACT

1. This action, filed September 6, 1961, seeks review of a reparation order of the Interstate Commerce Commission in Docket 32065, Thomson Phosphate Co. v. Atlantic Coast Line Railroad Company et al., 303 I.C.C. 25, 311 I.C.C. 315. The complaint before the Interstate Commerce Commission was filed on October 16, 1956. It alleged that the rates assessed on ground phosphate rock were unjust and unreasonable to the extent that they exceeded 75% of certain rates on fertilizer materials.

The shipments of phosphate rock (about 636 in number) were from Prairie, Florida, to more than 100 destinations in Illinois during the period April 1945 through December 1950, as tabulated in Appendix A, 311 I.C.C. 315, 318.

The amount involved is $8,889.76 with interest at 4% per annum from the dates the charges were collected. All of the shipments were made and the charges were paid between April 10, 1945, and December 31, 1950; the accrued interest and principal accordingly may reach $15,000.

The Railroads contended that the assessed rates were not unreasonable, and further contended:

(a) That Thomson was barred by the 2-year statute of limitations in § 16(3) of the Interstate Commerce Act, 49 U.S.C. § 16(3), because the shipments all moved prior to December 31, 1950, and the complaint was not filed until October 16, 1956;

(b) That Thomson and the Commission had failed to observe the requirements of Commission Rule of Practice 25(f) and thus failed to stay the Statute of Limitations (Rule 25 is attached hereto as an appendix);

(c) That the Informal Complaint 174417, filed March 20, 1946, which Thomson and the Commission relied upon to stay the Statute of Limitations [§ 16(3) (b)], did not satisfy the Commission Rule of Practice 25(b) in that it did not include the proper details regarding shipments;

(d) That the Formal Complaint, filed October 16, 1956, did not satisfy Commission Rule of Practice 29 and thus did not stay the Statute of Limitations;

(e) That likewise it did not satisfy Rule 17(b) regarding signing and verification by an executive officer;

(f) That Thomson had sold its interest in all claims on shipments moved prior to January 1, 1948, and thus had no right to claim reparations;

(g) That Thomson did not pay or bear the freight charges and thus was not entitled to recover in any event;

(h) That Thomson, a corporation, was dissolved in September 1951 and, accordingly, could not therefore file an action or institute formal proceedings before the Interstate Commerce Commission in October 1956;

(i) That it was error to award reparations at all; and further that it was error to award interest for all this period of time in which a complainant sat back

for over 10 years as to some shipments before taking formal action.

2. The matter was handled in 1957 by the Commission, by affidavits, under Modified Procedure. Hearing for cross examination of complainant's witnesses took place May 29, 1957.

Thereafter, the Examiner of the Interstate Commerce Commission issued his report in August 1957 and found that the claims were barred by the Statute of Limitations.

On February 10, 1958, a Division of the Commission issued a report (303 I.C.C. 25) ruling against the Railroads on all points discussed and completely disregarding others. A petition for reconsideration was filed by the Railroads and was denied by Commission order of July 23, 1958.

The Railroads refused to certify the amount of reparations due, and the matter was referred to an Examiner for a further hearing which took place April 27, 1959. After further proceedings, a second report of a Division of the Commission was issued September 28, 1960 (311 I.C.C. 315). This report was adverse to the Railroads, but of the three Commissioners, Commissioner Walrath dissented and stated that the claims were barred by § 16(3). A petition for reconsideration was filed and denied by order of May 23, 1961. Thus, at no time did the full Interstate Commerce Commission ever actually review this case.

Oral argument before the Commission was requested in three separate pleadings and in each instance was denied.

■ 3. Although the Railroads had the alternative of forcing Thomson to file suit to enforce the ICC order, it was felt that the procedural issue involved in the case justified taking the initiative in order to be sure of Court review of the alleged errors. Complaint was filed with this Court August 28, 1961. The ICC filed answer January 5, 1962. The United States answered on January 12, 1962, indicating that it would not participate in the defense.

4. The Interstate Commerce Commission filed a motion to dismiss, contending that the Railroad plaintiffs had no right to seek this review but had to wait for Thomson to file a court action to enforce the Commission order of reparation. This issue was separately briefed and argued in May 1962, and the motion was denied by order of May 15, 1962, in which it was held that the action was proper and that this Court had jurisdiction.

5. An Informal Complaint No. 174417 was filed by Thomson on March 20, 1946, pursuant to Interstate Commerce Commission Rule 25. It sought reparations on shipments "during the past two years" and did not specify a single shipment by any identifiable reference.

6. Thomson and the ICC rely on this Informal Complaint as having stayed the 2-year Statute of Limitations contained in § 16(3) (b) of the Interstate Commerce Act, 49 U.S.C. § 16(3), so as to permit the filing of Docket 32065 here under review.

7. On December 4, 1947, over twenty months later, Thomson advised the ICC that Informal Complaint No. 174417 was to cover shipments "during the pendency of this proceeding".

8. On December 17, 1947, the Railroads offered to pay reparations in Informal Complaint No. 174417 "on all shipments involved in this informal complaint upon which the statute of limitations has not run".

9. This proposal was accepted by Thomson, without qualification, in January 1948, and a Special Docket application, No. 218792, was prepared and filed with the ICC. The ICC issued an order September 19, 1950, authorizing the payment to Thomson of $13,071.98, which was paid to Thomson November 17, 1950. This was pursuant to ICC Rule 25(e).

10. Thomson received and cashed the check for $13,071.98 and then on December 7, 1950, asked for additional reparations on a different basis. The Railroads repeatedly refused payment and

stated that they had paid and had settled Informal Complaint 174417.

11. On July 20, 1951, however, the ICC advised that in its "informal view" Informal Complaint 174417 was still open for further claims. The Railroads thereafter took the position that they would pay no further claims; and after being requested by the Railroads several times, the ICC finally advised Thomson on June 26, 1952, that it would have to comply with Rule 25(f) if it desired to pursue the matter.

12. The ICC Hearing Examiner in his report of August 1957 found Docket 32065 barred by the payment to Thomson of $13,071.98 in 1950, saying:

"A study of the situation on September 19, 1950, leads only to the conclusion that the informal complaint had been satisfied and that no further complaint was pending.

"* * * Rule 25(f) provides for notice to the parties only when an informal complaint seeking damages cannot be disposed of informally, or is denied, or is withdrawn by complainant. None of those conditions prevailed here. There is no rule which in any way tolls the statute when as in this instance an informal complaint is closed by special docket approval after a compromise has been reached. The Commission is empowered to make such general rules as may be requisite for the order and regulation of proceedings before it and conduct its proceedings to best conduce to the proper dispatch of business and to the ends of justice, but the limitation provided by section 16(3) is jurisdictional and cannot be waived by the Commission or its staff. [A. J.] Phillips [Co.] v. Grand Trunk [Western] Ry., 236 U.S. 662 [35 S.Ct. 444, 59 L.Ed. 774]. Nor do the ends of justice appear to require waiver of established principles of contract law that an offer in compromise when accepted results in a con-

tract binding upon both parties, or that one cannot accept money offered in full settlement of a disputed claim and reject the conditions on which it is offered. Yazoo & M. V. R. Co. v. Webb [5 Cir.], 64 Fed. (2d) 902."

13. Thomson filed a formal complaint in the fall of 1952 on some shipments allegedly also covered by Informal Complaint 174417 and, after a nominally contested proceeding before the ICC, was paid $1,463.80 in 1955 by check reading "payment in full of all matters in Informal Complaint 174417". The Railroads were justified in considering that this had entirely closed out the matter.

14. Nevertheless, by letter of December 19, 1952, Thomson requested reopening of Informal Complaint 174417. This letter was not supplied to the Railroads until March 21, 1956. It contained no additional facts relating to Informal Complaint 174417, yet the ICC perfunctorily reopened the Informal Complaint by letter of December 24, 1952, stating that Informal Complaint 174414 (sic) was reopened "as originally filed".

15. The effect of this letter, if the obvious error in docket number is disregarded, can at most be to reopen Informal Complaint 174417 on shipments only during the two years prior to March 14, 1946, which is the way the Informal Complaint was originally filed.

16. Again Thomson revived the matter by correspondence to the Railroads and the ICC in October 1955, after being paid the $1,463.80. After many denials of responsibility by the Railroads, the ICC finally on March 29, 1956, advised Thomson:

"* * * we are again declining the complaint and directing your attention to the provisions of Rule 25(f) of our Rules of Practice."

17. On March 31, 1956, Thomson again wrote the ICC without any additional facts as required by Rule 25(f), and it requested reopening of Informal Complaint 174417; this was perfunc-

torily done by a subordinate Commission staff member. Again the Railroads said the matter was closed, yet the Commission staff member chose to argue the matter before finally on April 19, 1956, "again declining" the Informal Complaint and referring to Rule 25(f).

18. Docket 32065 was filed October 16, 1956, within six months after the letter of April 19, 1956, but more than six months after the letter of March 29, 1956. Thus Informal Complaint 174417 had to remain alive until April 19, 1956, if any claims survived the 2-year limitation period of 49 U.S.C. § 16(3) (b).

19. The complaint in Docket 32065 was one page in length which, even though filed years after the shipments moved, merely referred to Informal Complaint 174417 and failed to specify a single shipment; however, it took the ICC eight pages of small type to tabulate the shipments in its report at 311 I.C.C. 315, 318–27.

20. The complaint in 1956 was not signed and verified by an executive officer of Thomson as required by ICC Rule 17(b).

21. The complainant, Thomson Phosphate Co., an Illinois corporation, was sold to International Minerals and Chemicals Corp. in 1951, and was legally dissolved in 1951; nevertheless, this complaint was not filed until 1956. Illinois Law (Smith-Hurd Ill.Anno.Stat. ch. 32, § 157.94) requires that an "action or other proceeding" be commenced in two years.

22. The contract of sale of Thomson to I. M. & C. specifically reserved to Thomson the freight charge claims on shipments only between January 1, 1948, and December 31, 1950, yet Thomson seeks in 32065 to recover on shipments back to 1945. The ICC failed to apply the language of its letter of December 24, 1952, reopening Informal Complaint 174417 "as originally filed" which only covered shipments prior to March 14, 1946.

23. Thomson was merely a broker of phosphate rock in Illinois. It never did own, mine, manufacture, store, or even touch the product. Thomson first made sales and then ordered shipment by I. M. & C., which actually paid the Railroads' freight charges. Thomson billed the receiver with all costs, specifically itemizing freight charges; it thereafter collected and paid I. M. & C. If Thomson recovers here, it will have collected part of the freight charges twice, and it will have a windfall over ten years after the corporation was dissolved.

24. The shipments here went to many different locations (over 100) in Illinois to farmers for direct application to the soil as fertilizer, whereas the material in the cases relied on by Thomson went to chemical companies at a few points.

25. The record shows no plausible or defensible reason for Thomson handling its claims in such a piecemeal, dilatory way, that has resulted in this litigation being dragged out for more than a decade.

## CONCLUSIONS OF LAW

1. This action arises under, the United States is made a defendant herein in accordance with, and the jurisdiction of this court rests upon 5 U.S.C. § 1009, 28 U.S.C. §§ 1336, 1398 and 2201, and § 17(9) of the Interstate Commerce Act, 49 U.S.C. § 17(9), and F.R.Civ.P. 57.

2. This action is properly reviewable by a one-judge District Court instead of a three-judge Court because it involves an order for the payment of money. Pennsylvania R. R. v. United States, 363 U.S. 202, 205, 80 S.Ct. 1131, 4 L.Ed.2d 1165.

3. Venue exists under 28 U.S.C. § 1398 because Plaintiff Atlantic Coast Line Railroad Company is a corporation under the laws of Virginia, having its principal office at Jacksonville, Florida.

4. Section 16(3) (b) of the Interstate Commerce Act [49 U.S.C. § 16(3) (b)] destroys the right as well as the remedy, and it must be strictly

construed. It is jurisdictional and limits the power of the Interstate Commerce Commission to consider a complaint. [See annotations under 49 U.S.C. § 16(3)]. Accordingly, the Commission Rule 25 must also be strictly construed in this case.

■ 5. The payment of $13,071.98 to Thomson in November 1950, pursuant to order of the ICC in Special Docket 218792, terminated Informal Complaint 174417 as provided in ICC Rule 25(e). Therefore, it was not necessary that any further action be taken, or advice be given, by the ICC to terminate the Informal Complaint under Rule 25(f).

Established principles of contract law regarding compromise and settlement also require the conclusion that Informal Complaint 174417 was closed out. Yazoo & M. V. R. R. v. Webb, 5 Cir., 64 F.2d 902.

■ Accordingly, Docket 32065, filed in 1956 and covering shipments in 1950 and prior years, was barred by 49 U.S.C. § 16(3) (b), and Informal Complaint 174417 cannot be relied upon to stay the running of the 2-year limitation period.

■ 6. The letter of December 19, 1952, from Thomson to the ICC did not contain the "additional fact basis" required by ICC Rule 25(f), and the letter of the Commission Acting Secretary dated December 24, 1952, improperly reopened Informal Complaint 174417. See Mente & Co., Inc. v. C. of Ga. Ry., 296 I.C.C. 21; Domestic Coke Corp. v. B. & O., 168 I.C.C. 53; Carpenter Paper Co. v. C. & A. R. Co., 171 I.C.C. 783; South Chester Tube Co. v. Reading Co., 181 I.C.C. 613. Thus, the present Docket 32065 is also barred because Informal Complaint 174417 could not have been reopened by the ICC under Rule 25(f).

■ 7. Thomson is likewise barred by its acceptance of the check in 1955 representing "payment in full of all matters in Informal Complaint 174417". This terminated and compromised whatever might then have been left of Informal Complaint 174417, and it could no longer stay the Statute of Limitations contained in 49 U.S.C. § 16(3) (b).

■ 8. Additionally, Docket 32065 is barred because it was not filed within six months of the ICC letter of March 29, 1956, which declined Informal Complaint 174417. The subsequent reopening and declination on April 19, 1956, did not comply with ICC Rule 25(f) because no additional facts were submitted.

■ 9. Although the decision of the Court is not necessarily based upon this conclusion, it is nevertheless the opinion of the Court that the complaint in Docket 32065 did not stop the running of the statute of limitations because it did not comply with ICC Rules of Practice 17(b), 25(b) and 29, which require the signing and verification by an executive officer of Thomson and that formal complaints supply the data required of informal complaints by Rule 25(b). From this conclusion, it would follow that all shipments covered by 32065 are now barred.

■ 10. Likewise, it appears to the Court that the Informal Complaint 174417, filed in 1946, fails to satisfy Rule 25(b), and thus all shipments allegedly covered thereby are barred by 49 U.S.C. § 16(3). See Thurston Chemical Co. v. A.C.L., 291 I.C.C. 357, 358; N. A. Smelting Co. v. B&O, 309 I.C.C. 619; American Stores v. A.C. & Y., 310 I.C.C. 127; Texas Gas Trans. Corp. v. A. & S.R., 310 I.C.C. 207, 208.

11. In view of the above conclusions of law which have been reached by the Court, it is unnecessary to consider:

(a) Whether or not Thomson could bring a suit in 1956, since it was an Illinois corporation dissolved in 1951.

(b) Whether or not Thomson's sale to I. M. & C. affected its rights to reparations.

(c) The reasonableness *vel non* of the rates involved.

(d) All other questions raised by the record and not specifically disposed of herein.

12. The reports of the Interstate Commerce Commission in Docket 32065, Thomson Phosphate Co. v. A.C.L., 303 I.C.C. 25, 311 I.C.C. 315, and the related orders of September 28, 1960 and July 13, 1961 are unlawful. A judgment should accordingly be entered enjoining, setting aside, and annulling said reports and orders and holding that the complaint in 32065 was barred by the statute of limitations, 49 U.S.C. § 16(3) (b).

13. Judgment will be entered in accordance with the present Findings of Fact and Conclusions of Law.

### APPENDIX

Interstate Commerce Commission Rule 25 (49 C.F.R. 1.25) reads:

"§ 1.25 . *Informal complaints seeking damages—*

"(a) *Actual filing required.* Notification to the Commission that an informal complaint may or will be filed later seeking damages is not a filing within the meaning of the statute except as provided in paragraph (e) of this section.

"(b) *Content.* An informal complaint seeking damages, when permitted under the act, must be filed within the statutory period, and should contain such data as will serve to identify with reasonable definiteness the shipments or transportation services in respect of which damages are sought. Such complaint should state: (1) that complainant makes claim for damages, (2) the name of each individual claimant seeking damages, (3) the names of defendants against which claim is made, (4) the commodities, the rate applied, the date when the charges were paid, by whom paid, and by whom borne, (5) the period of time within which or the specific dates upon which the shipments were made, and the dates when they were delivered or tendered for delivery, (6) the points of origin and destination, either specifically or, where they are numerous, by definite indication

of a defined territorial or rate group of the points of origin and destination and, if known, the routes of movement, and (7) the nature and amount of the injury sustained by each claimant.

"(c) *Statement of prior claim.* If a complaint filed under paragraph (b) or (e) of this section contains a claim on any shipment which has been the subject of a previous informal or formal complaint to the Commission, reference to such complaint must be given.

"(d) *Copies.* The original of an informal complaint seeking damages must be accompanied by copies in sufficient number to enable the Commission to transmit one to each defendant named.

"(e) *Special-docket proceedings.* Where the act provides for an award of damages for violation thereof and a carrier is willing to pay them, or to waive collection of undercharges, petition for appropriate authority should be filed by the carrier on the special docket in the form prescribed by the Commission. If the petition is granted an appropriate order will be entered. Such petition, when not filed in connection with an informal complaint pending before the Commission, must be filed within the statutory period and will be deemed the equivalent of an informal complaint and an answer thereto admitting the matters stated in the petition. If a carrier is unable to file such petition within the statutory period and the claim is not already protected from the operation of the statute by informal complaint, a statement setting forth the facts may be filed by the carrier within the statutory period. Such statement will be deemed the equivalent of an informal complaint filed on behalf of the shipper or consignee and sufficient to stay the operation of the statute.

"(f) *Six months' rule.* If an informal complaint seeking damages cannot be disposed of informally, or is denied, or is withdrawn by complainant from further consideration, the parties affected will be so notified in writing by the Commission. The matter in such complaint will not be

reconsidered unless, within six months after the date such notice is mailed, either a formal complaint as to such matter is filed, or it is informally resubmitted on an additional fact basis.

"Such filing or resubmission will be deemed to relate back to the date of the original filing, but reference to that date and the Commission's file number must be made in such resubmission or in the formal complaint filed. If the matter is not so resubmitted, or included in a formal complaint, as provided in this section, complainant will be deemed to have abandoned the complaint and no complaint seeking damages based on the same cause of action will thereafter be placed on file or considered unless itself filed within the statutory period."

Matthes, Circuit Judge, dissented.