**INTERSTATE COMMERCE COMMISSION, Appellant,**

v.

**ATLANTIC COAST LINE R. CO. et al., Appellees.**

**No. 20485.**

United States Court of Appeals
Fifth Circuit.

July 8, 1964.

---

Donald C. Lehman, Asst. U. S. Atty., Jacksonville, Fla., Leonard S. Goodman, Atty., I.C.C., Robert W. Ginnane, Gen. Counsel, I.C.C., Washington, D. C., for appellant.

Phil C. Beverly, Jacksonville, Fla., J. Edgar McDonald, New York City, Urchie B. Ellis, Richmond, Va., for appellees.

John F. Donolan, John M. Cleary, Washington, D. C., Harold E. Spencer, Chicago, Ill., amici curiae.

Before TUTTLE, Chief Judge, and POPE * and BROWN, Circuit Judges.

* Of the Ninth Circuit, sitting by designation.

1. Thomson Phosphate Company.

2. Thomson Phosphate Co. v. Atlantic Coast Line R.R., 1953, 291 ICC 1, 1954, 293 ICC 369, 1958, 303 ICC 25. Not surprisingly, one of the Carrier's defenses is

JOHN R. BROWN, Circuit Judge.

The question in this case—arising for the first time in the 75-year operation of the Interstate Commerce Act—is whether a carrier may sue to set aside a reparation award of the Commission under § 16 (1) by a suit under § 17(9), 28 U.S.C.A. §§ 1336, 1398, 2321–2323, or must confine its challenge as a defense in the Shipper's suit when, where and as brought under § 16(2). The District Court upheld the right. The ICC, joined by an array of shipper interests, spiritedly challenges the holding. We think the attack is unavailing and affirm.

The facts are very simple. In response to the complaint of the Shipper,[1] the ICC awarded reparations in the amount of $8,889.76 with interest, for unjust and unreasonable rates collected for phosphate movements from Florida to Illinois during the period April 10, 1945, to December 31, 1950.[2] The order called for payment on or before August 28, 1961, the effective date of compliance, Missouri Pacific R. Co. v. Austin, 5 Cir., 1961, 292 F.2d 415, 418–419. On September 6, 1961, the Carrier-appellees filed a suit in the Middle District of Florida, the venue district of Atlantic Coast Line to set aside the order. Long thereafter, on August 22, 1962, the Shipper filed suit against the Carrier and other railroads under § 16(2) in the Southern District of New York for the amount of the award with interest and, of considerable importance here, attorney's fees. The Court below overruled the ICC's motions to dismiss which asserted the exclusive method of review is under § 16(2). Thereafter, on the merits, it held the award and order invalid, primarily because of the statute of limitations. 213 F.Supp. 199.[3]

The ICC asserts that the sole review of an order granting reparations under §

that in this long span of years even an impersonal corporate person had expired.

3. By an agreed statement of the case on appeal, F.R.Civ.P. 76, the appeal presents only the question of jurisdiction. No attack is made on the District Court's decision on the merits.

16(1) [4] is that provided in § 16(2).[5] The Carrier, on the other hand, insists that § 17(9) [6] expressly authorizes "a suit to enforce, enjoin, suspend, or set aside" an order, thus setting in train the jurisdictional-procedural provisions of 28 U.S. C.A. §§ 1336,[7] 1398,[8] 2321,[9] 2322,[10] and 2323.[11]

The ICC's approach is a dual one. It contends, first, that construction of all of the statutes together manifests a congressional purpose to restrict review of a

4. 49 U.S.C.A. § 16(1):
"If, after hearing on a complaint made as provided in section 13 of this title, the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter for a violation thereof, the commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named."

5. Section 16(2) of the Interstate Commerce Act, 49 U.S.C.A. § 16(2) provides:
"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the plaintiff shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."

6. 49 U.S.C.A. § 17(9):
"(9) When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commissioner, or a board with respect to any matter assigned or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, by the Commission or an appellate division, a suit to enforce, enjoin, suspend, or set aside such decision, order, or requirement, in whole or in part, may be brought in a court of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, but not otherwise."

7. 28 U.S.C.A. § 1336:
"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."

8. 28 U.S.C.A. § 1398:
"Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action."

9. 28 U.S.C.A. § 2321:
"The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter.
"The orders, writs, and process of the district courts may, in the cases specified in this section and in the cases and proceedings under sections 20, 23, and 43 of Title 49, run, be served, and be returnable anywhere in the United States."

10. 28 U.S.C.A. § 2322:
"All actions specified in section 2321 of this title shall be brought by or against the United States."

11. 28 U.S.C.A. § 2323:
"The Attorney General shall represent the Government in the actions specified in section 2321 of this title * * *.
"The Interstate Commerce Commission and any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties of their own motion and as of right, and be represented by their counsel, in any action involving the validity of such order or requirement or any part thereof, and the interest of such party. * * *"

reparations award to the Shipper's suit under § 16(2). Next, both as a part of that argument, and independent of it, the ICC further asserts that there is no reviewable final "order" as called for in §§ 17(9), 1336 or 1398.

These arguments stress the non-self-executing aspects of a reparation award. Since they are "for the payment of money," the Carrier is not bound to comply under the imminence of a mandatory injunction suit brought by the ICC or the United States. § 16(12), 49 U.S. C.A. § 16(12). Emphasizing that § 16 (2) provides only that "the findings and order of the commission shall be prima facie evidence of the facts therein stated," the ICC urges isolated excerpts from early opinions of the Supreme Court to suggest that it is really not an order at all. Thus Mills v. Lehigh Valley R. R. Co., 1915, 238 U.S. 473, 482, 35 S.Ct. 888, 892, 59 L.Ed. 1414, had this to say of § 16(2): "The statutory provision merely established a rule of evidence. It leaves every opportunity to the * * * [Carrier] to contest the claim." [12]

But we have no doubt that this award has all of the characteristics of finality so far regarded as essential to court review under statutes comparable to those here involved. Rochester Tel. Corp. v. United States, 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563; Frozen Food Express v. United States, 1956, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910; United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081; El Dorado Oil Works v. United States, 1946, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053. An award-order is, first, administratively final. Nothing further remains to be done by the ICC. It is not a declaration of consequences dependent on further, future action. Rather, it is positive and presently operative. It declares, first, the violation of the Act (unreasonable, unjust rates, and the like) and then finds the amount of the Shipper's claim. On the two findings, it directs the payment of the award. And as United States v. I. C. C., 1949, 337 U.S. 426, 432–433, 69 S.Ct. 1410, 93 L.Ed. 1451, and Pennsylvania R. R. Co. v. United States, 1960, 363 U.S. 202, 205, 80 S.Ct. 1131, 4 L.Ed.2d 1165, made clear, finality for the purposes of review is not to be determined solely by the terms of the order, but by whether such order "if upheld" forecloses a right or imposes an obligation. Assuming that a § 16(2) suit is necessary for the Shipper to coerce payment, the resulting court judgment is to "uphold" the award, to hold it valid. In that judicial result, the administrative proceedings have not in any sense been superseded. The critical finding of a violation of the Act as an essential ingredient to recovery rests

12. At the same term the Court stated in Meeker & Co. v. Lehigh Valley R. R. Co., 1915, 236 U.S. 412, 430, 35 S.Ct. 328, 335, 59 L.Ed. 644: "This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents."

Its sweeping assurance of a jury trial and "contestation of all the issues, * * * of fact" must now be read with considerable reservation. All acknowledge that under the doctrine of primary jurisdiction the § 16(2) court may not independently determine the merits of the unjustness or unreasonableness of rates, discriminatory practices, and the like. We may assume, without deciding, that review of such "administrative" matters subject to the expertise of the ICC in a § 16(2) suit is no less than in one under §§ 1336, 1398. It is clear that it is not greater. New Process Gear Corp. v. New York Central R. R. Co., 2 Cir., 1957, 250 F.2d 569, 572, cert. denied, 1958, 356 U.S. 959, 78 S.Ct. 996, 2 L.Ed.2d 1066, citing United States v. I. C. C., 1949, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Mitchell Coal & Coke Co. v. Pennsylvania R. R. Co., 1913, 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472; Glens Falls Portland Cement Co. v. Delaware & Hudson Co., 2 Cir., 1933, 66 F.2d 490, cert. denied, 1933, 290 U.S. 697, 54 S.Ct. 132, 78 L.Ed. 599.

wholly and entirely upon the administrative decision of the ICC, not independent court determination, since recovery by the Shipper assumes that the primary jurisdiction aspect has withstood the restricted review, see note 12, supra.

Bearing in mind that the problem here is the determination of the statutory mechanism for review in reparation award order cases generally, not merely the machinery which would satisfy this particular case, we perceive additional factors giving final operative effect to the award-order no matter what happened in the Shipper's § 16(2) suit.

██ An award-order is in two parts, (1) the determination of violation of statutory policies, unjust, unreasonable rates, discriminatory practices, or the like, and (2) specific damage to the shipper-complainants. So long as element (1) is outstanding and not set aside, it affords the basis for a § 9 suit, 49 U.S.C.A. § 9, by a shipper similarly situated without his first going through a reparation proceeding. And in A. J. Phillips v. Grand Trunk W. Ry. Co., 1915, 236 U.S. 662, 35 S.Ct. 444, 445, 59 L.Ed. 774, and many others, the Court has held that a person not a party complainant to a proceeding before the ICC may, on the general finding that the rate was unjust and unreasonable, bring his independent suit in court. Of the administrative finding that the rates were unjust and unreasonable, the Court said the "finding * * * was general in its operation, and inured to the benefit of every person that had been obliged to pay the unjust rate. Otherwise those who filed the complaint, or intervened during the [Commission] hearing, would have secured an advantage over the general body of the public, with the result that the order of the Commission would have created a preference in favor of the parties to the record, and would have destroyed the very uniformity which that body had been organized to secure." 236 U.S. 662, at 665, 35 S.Ct. 444, at 445. In addition, there is a substantial indication that in the day-to-day operations of the ICC in the fabrica-

tion and building of its own formidable body of transportation law, reparation order-awards announcing principles are regarded as precedents. Thus the opinion reports of the ICC here, note 2, supra, until set aside by a direct proceeding, remain outstanding precedents on the question of the statute of limitation notwithstanding the possibility that in the § 16(2) suit in the Southern District of New York a jury might bring in a verdict for the Carrier. Even 100% success in the § 16(2) suit leaves the Carrier faced with unsatisfactory law for all to use and unsatisfactory fact findings for all shippers to use.

Symmetry also suggests a congressional purpose to allow review of an award-order granting reparations under § 17(9). It is unquestioned that if the Commission denies the Shipper's reparation complaint, review may properly be had under §§ 1336, 1398. Cf. United States v. I. C. C., 1949, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451. And in a § 9 suit, 49 U.S.C.A. § 9, the administrative determination of primary jurisdiction elements on a referral to the ICC by a Court is reviewable under §§ 17(9), 1336, 1398. Pennsylvania R. R. Co. v. United States, 1960, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165.

Against this massive structure of injunctive reviewability, the Commission's thesis comes down to the assertion that Congress meant to allow court review of the grant of an award-order granting reparation only in the shipper's § 16(2) suit. In so doing, stress is laid on the procedural advantages given the shipper —(1) freedom from court costs, (2) attorney's fees if successful, (3) choice of venue, and (4) relief from the burden of making out a prima facie case by introducing in evidence the administrative findings and order. Urged as a fitting, railroad analogy is the statutory mechanism for awards under the Railway Labor Act, 45 U.S.C.A. §§ 151, 153, First (p). Under this provision, an employee who has obtained an award of the National Railroad Adjustment Board may file suit in the District Court for enforce-

ment if the carrier does not comply with the agency order. The order is prima facie evidence of the facts therein stated. In New Orleans Public Belt R. Commission v. Ward, 5 Cir., 1950, 182 F.2d 654, following Washington Terminal Co. v. Boswell, 1941, 75 U.S.App.D.C. 1, 124 F. 2d 235, affirmed by an equally divided court, 1943, 319 U.S. 732, 63 S.Ct. 1430, 87 L.Ed. 1694, we held that a carrier could not circumvent this statutory right of the employee by resorting to a declaratory judgment suit.

We think the resemblance is superficial. We would think also that to import into the highly specialized aspects of carrier regulation and the statutory scheme of determination and review especially contrived for it, the cumbersome and frequently difficult distinctions between major and minor, between court decision and Adjustment Board decision, between Adjustment Board and Mediation Board, between Court and Mediation Board will hinder, not help, in achieving judicial review which is clearly guaranteed under the Administrative Procedure Act. 5 U. S.C.A. §§ 1009, 1001(d), (f), and (g).

Many reasons may be briefly summarized. The actions of the Railway Adjustment Board are not subject to the Administrative Procedure Act. The provision of 45 U.S.C.A. § 153, First (p) expressly invests the Court with power to "enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the * * * Board." At the same time there is no other statutory grant of review as in § 17(9). An Adjustment Board proceeding resulting in a money award carries forward no elements of primary jurisdiction with limited, restricted judicial review. Such an award is open for full review. Hodges v. Atlan-

tic Coast Line R. R. Co., 5 Cir., 1962, 310 F.2d 438. Probably most important, that structure is hardly a model to be copied.[13]

The procedure invoked by the Carrier here is fair and efficient. Brought in the same single Judge District Court[14] in which the Shipper's complaint would be filed complaining of a denial of a § 16(1) reparation award or to review an unsatisfactory finding in a court referral proceeding upon which to base a § 9 suit, there may be a determination once and for all of the underlying validity of the Commission's findings with respect to violations of the Act (unjust, unreasonable rates, discriminatory practices, etc.). If the order vis-a-vis the ICC and the Carrier fails to pass muster and is therefore "not in accordance with law," 5 U.S.C.A. § 1009(e), it may then be set aside. No one, whether Carrier or Shipper, will thereafter be subjected to the expense of useless litigation in numerous courts where separate § 16(2) shipper suits have been filed.

More important, this assures some symmetry in the construction and maintenance of a national transportation policy. In the injunction suit, §§ 17(9), 1336, 1398, the United States and the ICC are parties. The Attorney General and the General Counsel of the Commission are directly and immediately responsible for the conduct of that litigation and the advocative assertion of contentions deemed essential in the public interest. This is all the more essential where, as is quite frequent, there is an outright clash between the executive departments of the Government, the Attorney General, and the Commission. See United States v. I. C. C., 1949, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451. In contrast, of course, in

13. The dissenting opinions in Pennsylvania R. R. Co. v. Day, 1959, 360 U.S. 548, 554, 79 S.Ct. 1322, 3 L.Ed.2d 1422; Union Pacific R. R. Co. v. Price, 1959, 360 U.S. 601, 617, 79 S.Ct. 1351, 3 L.Ed. 2d 1460, pointing up serious constitutional questions emphasize what they describe as the one-sided nature of judicial review: the employee loses, he has no right of review whatsoever; the employee wins, the carrier loses, the carrier has unlimited review on facts and law.

14. United States v. I. C. C., 1949, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Pennsylvania R. R. Co. v. United States, 1960, 363 U.S. 202, 80 S.Ct. 1131, 4 L. Ed.2d 1165.

the Shipper's § 16(2) suit neither the Commission nor the Government is a party. Intervention, whether permissive or as a matter of right, is something less than satisfactory especially with the pendency of a number of shipper suits in a number of jurisdictions. Without intervention, the sole spokesman in behalf of the ICC's order is the private party seeking partisan relief opposed by formidable, experienced, competent counsel for the Carrier.

We cannot believe that these important considerations were derailed by Congress out of its statutory desire to accord to a Shipper some procedural benefits. Indeed, with respect to the element of shipper damage, it is entirely too soon to state that a Shipper may not under appropriate circumstances obtain the benefit of all, or a part, of these statutory advantages by intervening in the injunction proceeding. And considering the great flexibility open to an equity court, the conclusion reached here that an injunction suit may be maintained by the Carrier does not force that Court to take on the adjudication of all of the damage element claims of numerous shippers. Wide latitude would be allowed to fashion appropriate, preliminary machinery by which shipper suits could be filed in appropriate venue districts and stayed pending ultimate determination of the injunction proceeding. A decree sustaining basic validity would likely leave for the individual § 16(2) suits only the limited issue of money damage, presumably a relatively simple matter for court or jury determination with the Shipper armed, as he is, with the working presumption from the prima facie case.

The District Court was, therefore, correct in overruling the motion to dismiss, in sustaining the right of judicial review in that Court under §§ 1336, 1398, and in rejecting the contention that review had to be in the § 16(2) suit pending in New York.[15]

Affirmed.

15. The ICC's contention that the trial court, having jurisdiction, should nevertheless have declined to exercise it for equitable considerations is without merit.