## H. K. PORTER CO., INC., ET AL. *v.* CENTRAL VERMONT RAILWAY, INC., ET AL.

No. 257.  Argued April 20, 1961.—Decided May 22, 1961.*

*Richard A. Solomon* argued the cause for the United States in No. 266.  With him on the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Bicks, Acting Assistant Attorney General Kirkpatrick* and *Charles H. Weston.*

*Robert W. Ginnane* argued the cause for appellant in No. 258.  With him on the briefs was *H. Neil Garson.*

*E. B. Ussery* and *John D. Carbine* submitted the cause on briefs for appellants in No. 257.

---

*Together with No. 258, *Interstate Commerce Commission* v. *Central Vermont Railway, Inc., et al.,* and No. 266, *United States* v. *Central Vermont Railway, Inc., et al.,* also on appeals from the same Court.

*J. Edgar McDonald* argued the cause for appellees. With him on the brief were *J. Raymond Hoover, William H. Parsons, Horace H. Powers, John F. Reilly* and *William F. Zearfaus.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The Interstate Commerce Act confers broad powers upon the Interstate Commerce Commission to regulate railroad transportation in the United States or to or from a foreign country, "but only insofar as such transportation . . . takes place within the United States." [1] In this case, here on appeal under 28 U. S. C. §§ 1253 and 2101 (b), a three-judge District Court set aside a Commission order on the ground that the Commission was attempting to regulate railroad transportation in Canada in excess of the Commission's jurisdiction. [2]

The Province of Quebec, Canada, is a principal source of asbestos for manufacturers of asbestos products in this country. It is transported by Canadian railroads through southern Canada to points in Vermont three to five miles south of the border and carried from there by the various appellee railroads to other points in the United States. Canadian and American carriers have joined in the publication of joint through rates available to consignees in "official territory" in the Northeastern States, [3] which rates are substantially lower than the combination of separate or local rates that are published and available as combination through rates for consignees in the Southern States. On the basis of these and other facts the Commission found after hearings that the higher

---

[1] 49 U. S. C. § 1 (1) (a) and § 1 (2).

[2] 182 F. Supp. 516.

[3] "Official territory" is in general that area of the United States lying east of the Mississippi River and north of the Potomac and Ohio Rivers. See Class Rate Investigation, 1939, 262 I. C. C. 447, 457.

combination rates to complainants in the South were: (a) "unjust and unreasonable" and therefore in violation of § 1 (5) of the Act,[4] and (b) "unduly prejudicial" to the southern consignees and "unduly preferential" to the northern consignees enjoying the lower joint rates, and therefore in violation of § 3 (1).[5]  The Commission then entered its order directing the railroads to cease and desist from continuing to practice the undue prejudice and preference it had found and to establish, post and maintain rates and practices which would thereafter "prevent and avoid" such prejudice and preference.[6]

The District Court's holding that the Commission was without jurisdiction was based on its assumption that the Commission's order attempted to control the Canadian part of the transportation.  But the order did not run against any transportation except that taking place "within the United States."  The order directed the defendant railroads, "according as they participate in the transportation within the United States," to take action within their power to cease their participation in a transportation practice that the Commission had found to be prejudicial in violation of § 3 (1).  The affected transportation within this country was that "from a foreign country" over which § 1 (1) (a) specifically gives the Commission jurisdiction, and the order did nothing more than direct railroads engaged in that transportation to adjust

---

[4] 49 U. S. C. § 1 (5).

[5] 49 U. S. C. § 3 (1).

[6] Since the challenged order prescribed no "reasonable rates" to be observed, we have no occasion to consider the contention that the Commission was without jurisdiction to prescribe such rates.  Nor did the Commission enter any final order that a complainant is entitled to an award of damages because it had been charged unlawful rates.  Such an order, when and if made, can be challenged before a single judge under 49 U. S. C. § 16 (2).  See *United States* v. *I. C. C.*, 337 U. S. 426, 442–443; *Pennsylvania R. Co.* v. *United States*, 363 U. S. 202, 205.

their transportation practices "within the United States" in such a way as to eliminate illegal discriminations. These railroads operating within the United States undoubtedly have complete power to stop these discriminations. Mere withdrawal by the American railroads from the preferential joint through-rate agreements would be an obvious way to do so, and an alternative method would be to lower the combination through rates to southern territory by reduction of the rates from the Vermont interchange points to the South.

It has long been settled that the Commission's power to forbid unlawful rate discriminations is in no way diminished because the rates are published as joint through rates or combination through rates.[7] This power likewise is not lost merely because the particular transportation by railroads carrying goods in this country happens to be a continuation of carriage from another country. Otherwise the Commission's mandate to protect shippers against all undue discriminations would be frustrated with respect to rates that in part include payment for transportation that takes place in a foreign country.[8]

It was error to set aside the Commission's order for lack of jurisdiction, and therefore the District Court's judgment is

*Reversed.*

---

[7] See United States v. *Illinois Central R. Co.*, 263 U. S. 515, 527.

[8] Cf. Commissioner Eastman's concurring opinion in *Cyanamid and Crude Cyanide from Niagara Falls, Ontario*, 155 I. C. C. 488, 501–502.