## INTERSTATE COMMERCE COMMISSION *v.* ATLANTIC COAST LINE R. CO. ET AL.

No. 14.   Argued December 6, 1965.—Decided March 22, 1966.

*Robert W. Ginnane* argued the cause for petitioner. With him on the briefs for petitioner and for the United States, as *amicus curiae,* were *Solicitor General Marshall,* former *Solicitor General Cox, Bruce J. Terris, Leonard S. Goodman* and *Richard A. Posner.*

*J. Edgar McDonald* argued the cause for respondents. With him on the brief were *Phil C. Beverly* and *Urchie B. Ellis.*

MR. JUSTICE WHITE delivered the opinion of the Court.

This case is before the Court for a determination of when and in what proceedings a common carrier by rail may challenge an order of the Interstate Commerce Commission awarding reparations to a shipper claiming injury because of the carrier's violation of the Act.

A shipper, Thomson Phosphate Company, filed a complaint with the Commission alleging that certain rates charged by respondent railroads were unjust and unreasonable and seeking reimbursement of those transportation charges to the extent they were unlawful. Interstate Commerce Act §§ 8 and 9, 24 Stat. 382, as amended, 49 U. S. C. §§ 8 and 9 (1964 ed.). The Commission sustained the complaint and issued a report finding that

the assailed rates were unjust and unreasonable and that the shipper was entitled to reparations. *Thomson Phosphate Co.* v. *Atlantic Coast Line R. Co.,* 303 I. C. C. 25 (Div. 2, 1958). When respondents refused to certify the shipper's statements showing the shipments made during the period involved, the Commission reopened the proceeding for a determination of the amount of reparations due. After such additional proceedings, the Commission found Thomson was entitled to reparations of $8,889.76 with interest, and an order was entered authorizing and directing respondents to pay such sum by a specified date, later amended to August 28, 1961. 311 I. C. C. 315. Respondents refused to comply with the order and brought suit in the United States District Court for the Middle District of Florida under § 17 (9) of the Interstate Commerce Act, 24 Stat. 385, as amended, 49 U. S. C. § 17 (9), and 28 U. S. C. §§ 1336 and 1398 (1964 ed.) to enjoin, set aside, and annul the orders of the Commission. Respondents claimed, *inter alia,* that the Commission erred in finding the rates unreasonable and in not finding Thomson's claims barred by the Act's limitation provision, Interstate Commerce Act § 16 (3), 24 Stat. 384, as amended, 49 U. S. C. § 16 (3) (1964 ed.). Thomson, which was not a party to the carriers' action, filed in the Southern District of New York a suit against respondents and other railroads to enforce the Commission's reparation award pursuant to § 16 (2) of the Interstate Commerce Act, 49 U. S. C. § 16 (2) (1964 ed.). By stipulation, the New York case has been held in abeyance pending the outcome of the Florida case, which is presently before this Court.

The Commission moved to dismiss the carriers' injunction action, contending that reparation orders are not reviewable in such a suit and that the carriers were required to await the shipper's enforcement action to attack the Commission's order. The Florida District

Court denied the motion to dismiss and, on the merits, held that Thomson's claims were barred by limitations. 213 F. Supp. 199. The sole issue raised on appeal was whether the District Court had jurisdiction. The Court of Appeals affirmed, sustaining the jurisdiction of the Florida District Court. 334 F. 2d 46. We granted certiorari because of the importance of this question in the administration of the Act. 379 U. S. 957. We reverse and hold that when the Commission issues a reparation order, not accompanied by a cease-and-desist order, a carrier may obtain review of the Commission's order only in the court where the shipper commences its enforcement action—or where the shipper seeks review of the Commission's order, see *Consolo* v. *Federal Maritime Comm'n, post,* p. 607.

## I.

The Interstate Commerce Act contains detailed provisions governing the presentation and adjudication of claims for reparations. Section 8 is the basic provision creating liability and declares that any common carrier by rail which violates the Act "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation . . . ." By § 9, the complainant is given the alternatives of seeking such damages by complaint to the Commission, under the procedures established by § 13 (1), or of bringing suit in a federal district court. But the primary jurisdiction doctrine requires initial submission to the Commission of questions that raise "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by [the] Act." *United States* v. *Western Pac. R. Co.,* 352 U. S. 59, 65; *Texas & Pac. R. Co.* v. *American Tie & Timber Co.,* 234 U. S. 138. Accordingly, a shipper who commences his § 9 reparation proceeding in the District

Court will nevertheless be required to repair to the Commission for decision of issues, like the reasonableness of rates, which call the primary jurisdiction doctrine into play. When that occurs, the court ordering the reference of such issues to the Commission has exclusive jurisdiction of any civil action to enforce, enjoin, set aside, or annul a Commission order arising out of the referral, 28 U. S. C. § 1336 (b) (1964 ed.), such action to be brought within 90 days of the entry of the Commission's final order, 28 U. S. C. § 1336 (c) (1964 ed).

Our concern here, however, is with the alternative procedure provided in § 9, which involves an initial complaint before the Commission and culminates in the § 16 (2) suit to enforce the Commission's reparation award. Section 16 (1) provides that if the Commission determines the complainant is entitled to reparations it "shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named." If the carrier fails to comply with the order by the designated time, the shipper then has the right under § 16 (2) to file suit in either federal or state court to enforce the Commission's reparation award. Moreover, Congress has provided that in such a suit the shipper is to have certain procedural advantages designed to discourage "harassing resistance by a carrier to [the] reparation order." *St. Louis & S. F. R. Co.* v. *Spiller,* 275 U. S. 156, 159; see also *Meeker & Co.* v. *Lehigh Valley R. Co.,* 236 U. S. 412, 433; *Baldwin* v. *Milling Co.,* 307 U. S. 478. The shipper has a broad choice of venue. If the suit is brought in a federal court, see *Lewis-Simas-Jones Co.* v. *Southern Pac. Co.,* 283 U. S. 654, 661, the shipper is free from liability for costs, except as they accrue on its appeal, and it may introduce at trial the findings and order of the Commission, which "shall be prima facie evidence of the facts therein stated. . . ." In addition, the shipper is to be allowed

a reasonable attorney's fee if it prevails, an advantage also accorded under § 8 to shippers who elect to proceed in court in the first instance.[1]

---

[1] The relevant text of the provisions discussed in text above reads as follows:

"§ 8. Liability in damages to persons injured by violation of law.

"In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

"§ 9. Remedies of persons damaged; election; witnesses.

"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. . . .

. . . . 

"§ 13. Complaints to and investigations by Commission.

"(1) Complaint to Commission of violation of law by carrier; reparation; investigation.

"Any person, firm, corporation, company, or association, or any mercantile, agricultural, or manufacturing society or other organization, or any body politic or municipal organization, or any common carrier complaining of anything done or omitted to be done by any common carrier subject to the provisions of this chapter in contravention of the provisions thereof, may apply to said Commission by petition, which shall briefly state the facts; whereupon a statement of the complaint thus made shall be forwarded by the Commission to such common carrier, who shall be called upon to satisfy the complaint, or to answer the same in writing, within a reasonable

The Interstate Commerce Act likewise contains general provision for judicial review of Commission orders. Section 17 (9) provides that after an application for

time, to be specified by the Commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been done, the common carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier or carriers shall not satisfy the complaint within the time specified, or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper.

. . . . .

"§ 16. Orders of Commission and enforcement thereof.

"(1) Award of damages.

"If, after hearing on a complaint made as provided in section 13 of this title, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter for a violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum· to which he is entitled on or before a day named.

"(2) Proceedings in courts to enforce orders; costs; attorney's fee.

"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a complaint setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated, and except that the plaintiff shall not be liable for costs in the district court nor for costs at any subsequent state of the proceedings unless they accrue upon his appeal. If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." Interstate Commerce Act §§ 8, 9, 13 (1) and 16 (1) and (2), 49 U. S. C. §§ 8, 9, 13 (1) and 16 (1) and (2) (1964 ed.).

rehearing, reargument, or reconsideration has been denied or otherwise disposed of, a suit may be brought to enforce, enjoin, suspend, or set aside the Commission decision, order or requirement.[2]

Jurisdiction of both § 16 (2) and § 17 (9) suits is vested in the federal district courts by 28 U. S. C. § 1336 (a) (1964 ed.). Venue is determined by 28 U. S. C. § 1398 (a) (1964 ed.), which, "except as otherwise provided by law," limits suits to the judicial district where the party bringing the action has his residence or principal office. But because of the quoted exception, this venue restriction does not apply to suits commenced pursuant to § 16 (2), as that section contains its own venue provision.

Procedures for review of Commission orders "other than for the payment of money," see 28 U. S. C. § 2321 (1964 ed.), are governed by 28 U. S. C. §§ 2321–2325 (1964 ed.). Such actions must be brought by or against

---

[2] "§ 17 (9) Judicial relief from decisions, etc., upon denial or other disposition of application for rehearing, etc.

"When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commissioner, or a board with respect to any matter assigned or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, by the Commission or an appellate division, a suit to enforce, enjoin, suspend, or set aside such decision, order, or requirement, in whole or in part, may be brought in a court of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, but not otherwise." Interstate Commerce Act § 17 (9), 49 U. S. C. § 17 (9) (1964 ed.).

This provision was not added until 1940, Transportation Act of 1940, 54 Stat. 916, and is basically a provision requiring exhaustion of administrative remedies prior to resort to the courts. The first provision for direct judicial review of Commission orders appeared in § 5 of the Hepburn Act of 1906, 34 Stat. 590, 592, which was phrased in terms of venue only. For ease of reference, we will refer to direct review proceedings as § 17 (9) proceedings.

the United States, § 2322; the Commission and parties in interest appearing before the Commission may intervene as of right, § 2323; and no interlocutory or permanent injunction restraining enforcement of a Commission order may be granted unless the application is heard and determined by a three-judge district court, § 2325,[3] with direct review here, 28 U. S. C. § 1253 (1964 ed.). In

---

[3] The above-described provisions of the Judicial Code read in pertinent part:

"§ 1336. Interstate Commerce Commission's orders.

"(a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in any part, any order of the Interstate Commerce Commission.

.        .        .        .        .

"§ 1398. Interstate Commerce Commission's orders.

"(a) Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action.

.        .        .        .        .

"§ 2321. Procedure generally; process.

"The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter. . . .

"§ 2322. United States as party.

"All actions specified in section 2321 of this title shall be brought by or against the United States.

"§ 2323. Duties of Attorney General; intervenors.

"The Attorney General shall represent the Government in the actions specified in section 2321 of this title . . . in the district courts, and in the Supreme Court of the United States upon appeal from the district courts.

"The Interstate Commerce Commission and any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties of their own motion and as of right, and be represented by their counsel, in any

*United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, however, this Court held that Commission orders which determine in a reparation proceeding that assailed rates are unlawful but do not direct the carrier to cease and desist charging such rates, because the rates have been discontinued, "are not of sufficient public importance to justify the accelerated judicial review procedure," 337 U. S., at 442. Thus, though the procedures set out in 28 U. S. C. §§ 2321–2325 (1964 ed.) otherwise govern § 17 (9) proceedings to review such orders, § 2325 is not applicable and the matter may be adjudicated by a single judge. Because § 16 (2) actions seek enforcement of an order "for the payment of money," the above-described procedures do not apply. Section 16 (2) directs that actions thereunder "shall proceed in all respects like other civil suits for damages," with the exception of the special procedural advantages accorded the shipper to which we have previously referred.

## II.

From the foregoing summary it will be observed that § 16 (2) actions for enforcement of Commission reparation awards and § 17 (9) actions to set aside Commission orders are quite distinct proceedings, with different venue restrictions and different procedures. Moreover, Congress conferred certain procedural advantages on shippers bringing § 16 (2) actions that may well be lost

---

action involving the validity of such order or requirement or any part thereof, and the interest of such party. . . .

．　　　　　．　　　　　．　　　　　．　　　　　．

"§ 2325. Injunctions; three-judge court required.

"An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." 28 U. S. C. §§ 1336 (a), 1398 (a), 2321–2323, 2325 (1964 ed.).

or impaired if carriers may attack the Commission's order in a direct review proceeding pursuant to § 17 (9). Accordingly, we are asked to harmonize the language and purposes of the two provisions.[4]

At the outset, however, it should be emphasized that we are here concerned with a narrow, though important, category of cases. First, it is conceded that if the Commission's reparation order is accompanied by a cease-and-desist order, as it usually will be when the proceeding originates before the Commission and the rates or practices under attack continue in use, the carrier may obtain immediate review of the cease-and-desist order pursuant to § 17 (9); and such review will ordinarily determine the validity of the finding of statutory violation on which the reparation order is founded. A Commission cease-and-desist order respecting rates and charges, for example, which may be issued pursuant to the authority granted by § 15 (1) to prescribe just and reasonable rates, subjects the carrier to $5,000 per day penalties for noncompliance, 49 U. S. C. § 16 (8) (1964 ed.), and is typical of orders reviewed in suits to set aside Commission orders since the first such suit, *Stickney* v. *Interstate Commerce Comm'n*, 164 F. 638 (C. C. D. Minn.), aff'd, 215 U. S. 98; see also *Interstate Commerce Comm'n* v. *Delaware, L. & W. R. Co.*, 220 U. S. 235; *United States* v. *Interstate Commerce Comm'n*, 337 U. S. 426, 454 (Frankfurter, J., dissenting). Second, even when a cease-and-desist order is not joined with the reparation order, the latter order will be subject to direct review when no other means of securing review is available, re-

---

[4] As is readily apparent from this opinion, the statutory provisions governing this case and the companion case, *Consolo, post,* are an historical patchwork subject to more than one interpretation. The entire matter is surely ripe for congressional consideration, for it is of continuing significance and the competing considerations of yesterday may not be those of overriding importance today.

gardless of whether review is sought by a shipper, *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426; *Consolo* v. *Federal Maritime Comm'n, post,* p. 607, or the carrier, *Pennsylvania R. Co.* v. *United States,* 363 U. S. 202. In the cited cases the party seeking review could not obtain such review in a § 16 (2) suit, either directly or through interposition of a defense.

Thus in *United States* v. *Interstate Commerce Comm'n, supra,* the Government filed with the Commission a complaint seeking reparations, but the Commission found the assailed charges did not violate the Act and dismissed the complaint. As there was no award upon which to base a § 16 (2) suit, the United States would have been denied all review had jurisdiction of the § 17 (9) action not been sustained. Similarly, in *Consolo* v. *Federal Maritime Comm'n, post,* p. 607, we hold that a shipper may challenge in a direct review proceeding the adequacy of a reparation award, such a challenge being one that could not be pressed in an enforcement action, see *Baltimore & Ohio R. Co.* v. *Brady,* 288 U. S. 448, 457–458; *D. L. Piazza Co.* v. *West Coast Line,* 210 F. 2d 947 (C. A. 2d Cir. 1954), cert. denied, 348 U. S. 839.

*Pennsylvania R. Co.* v. *United States, supra,* involved a suit by a carrier in the Court of Claims to collect the charges due under its tariff. The United States defended on the ground that the rates were unreasonable, and the Court of Claims referred that issue to the Commission pursuant to the primary jurisdiction doctrine, *United States* v. *Western Pac. R. Co.,* 352 U. S. 59, 62–70. The Commission found certain rates unjust and unreasonable, without ordering reparations or issuing a cease-and-desist order, and the carrier filed a § 17 (9) suit in federal district court to set the order aside. On review of the Court of Claims' refusal to further suspend its proceedings pending the District Court action, this

Court held that the carrier was entitled to judicial review of the Commission order, that the Court of Claims had no jurisdiction to afford such review, and that the Court of Claims should therefore have suspended its proceedings. Because of the holding that the Court of Claims could not review the Commission order, failure to sustain the District Court's jurisdiction of the carrier's § 17 (9) action would again have precluded judicial review.

The essential question in this case is the extent to which *United States* v. *Interstate Commerce Comm'n* and *Pennsylvania R. Co.* v. *United States*, compel allowance of respondents' direct review action. The Commission asks us to limit those cases to their facts—situations where judicial review would not have been available if the § 17 (9) suit was not permitted. It argues that sufficient opportunity to obtain review of the Commission's finding that a statutory violation has occurred is afforded respondents by their right to challenge that determination in defense of Thomson's § 16 (2) action to enforce the reparation award. If jurisdiction to review in a § 17 (9) suit should be sustained, the Commission further contends, shippers will be deprived of many of the advantages bestowed by § 16 (2). And the historical development of § 16 (2) and the direct review proceeding is said to establish that Congress did not contemplate that the carrier could obtain direct review in a case like that at bar and thereby short-circuit the shipper's suit. Finally, the Commission urges that in reparation cases where the assailed rates are no longer in effect and no cease-and-desist order issues the Commission's order has little continuing or general significance but is comparable to an adjudication in a private damages action of interest only to the parties involved; therefore, it is appropriate for the order to be defended by the shipper, who is in effect compensated for such defense by the procedural

advantages accorded by § 16 (2), rather than by the United States and the Commission.

Respondents argue that, to the contrary, past practice and the decisions of this Court establish that the exclusive method of reviewing Commission findings that a statutory violation has occurred [5] is through a § 17 (9) proceeding and that such a finding may not be challenged and is not open to review in a § 16 (2) action. Respondents also argue that limiting review to the § 16 (2) proceeding would result in disparate treatment of shippers, through conflicting decisions in enforcement suits, and would thus violate the Act's cardinal principle of uniformity of rates.

As will appear more fully below, we take a middle course. We conclude that carriers may obtain full review by defending the § 16 (2) action and that the policy underlying that section precludes the carriers from obtaining review in a forum other than that chosen by the shipper. But we find no obstacle to the carriers' bringing a § 17 (9) cross-proceeding in the forum selected by the shipper, should they so desire.

### III.

A threshold question is raised by respondents' contention that the statutory violation issue is not open to review in a § 16 (2) enforcement action, the Commission's finding being conclusive on the enforcement court unless set aside in a § 17 (9) proceeding. If respondents are correct on this point, their § 17 (9) action must be

---

[5] Frequent Commission practice, illustrated by the procedure adopted in the present case, is to separate from the issue of shipper's damages issues respecting the existence of a statutory violation and the availability of statutory defenses such as the statute of limitations defense asserted by respondents and to try the latter issues first. The core of the dispute here concerns the forum for review of Commission findings on such issues of violation and limitations.

allowed under even the Commission's interpretation of *United States* v. *Interstate Commerce Comm'n*, 337 U. S. 426, and *Pennsylvania R. Co.* v. *United States*, 363 U. S. 202.

To support their view of the scope of review in the enforcement action, respondents refer principally to *Mitchell Coal & Coke Co.* v. *Pennsylvania R. Co.*, 230 U. S. 247. In that case, a shipper commenced its reparation suit under §§ 8 and 9 in a federal district court. This Court held that since the dispute raised "administrative" questions concerning the reasonableness of rates, the primary jurisdiction doctrine required the shipper to proceed first before the Commission. Regarding the weight to be accorded the Commission's resulting order, the Court said:

> "Such orders, so far as they are administrative are conclusive, whether they relate to past or present rates, and can be given general and uniform operation, since all shippers, who have been or may be affected by the rate, can take advantage of the ruling and avail themselves of the reparation order. They are quasi-judicial and only *prima facie* correct in so far as they determine the fact and amount of damage—as to which, since it involves the payment of money and taking of property, the carrier is by § 16 of the act given its day in court and the right to a judicial hearing . . . ." 230 U. S., at 258.

Accord, *Morrisdale Coal Co.* v. *Pennsylvania R. Co.*, 230 U. S. 304.

The prima facie evidence provision in § 16 (2), however, draws no express distinction between administrative and quasi-judicial findings of the Commission, and we said of that provision in *Meeker & Co.* v. *Lehigh Valley R. Co.*, 236 U. S. 412, 430, that "[i]t cuts off no defense [and] interposes no obstacle to a full contestation of all the issues . . . ." See also *United States* v. *Inter-*

*state Commerce Comm'n,* 337 U. S. 426, 435 (§ 16 (2) proceedings afford "railroads complete judicial review of adverse reparation orders"). Moreover, in one of the earliest cases under the Hepburn Act, the Court reviewed the question of statutory violation in a § 16 (2) case, concluded that the legal theory applied by the Commission was erroneous, and set aside the Commission's determination that the disputed rates were unreasonable. *Southern R. Co. v. St. Louis Hay & Grain Co.,* 214 U. S. 297. See also *Arizona Grocery Co. v. Atchison, T. & S. F. R. Co.,* 284 U. S. 370. The seemingly contradictory statements in the contemporaneous *Mitchell Coal* and *Meeker* decisions require explanation, which we believe can be found in the general course of decisions in that era respecting the scope of review of Commission orders.

From our brief résumé of the Court's opinion in *Mitchell Coal* it should be immediately apparent that the case did not, strictly speaking, require the determination of the scope of judicial review in § 16 (2) enforcement actions. The proceeding under review had been commenced in court pursuant to § 9 rather than § 16 and no Commission order had yet been entered. The question directly in issue concerned the applicability of the primary jurisdiction doctrine to cases involving discontinued, rather than present, rates.

Initially formulated in cases arising under the Interstate Commerce Act, the primary jurisdiction doctrine was premised in the early cases on the policy of the Act of assuring uniform rates. The Court reasoned that many questions arising under the Act, such as whether rates were unreasonable or discriminatory, were essentially questions of fact particularly appropriate for determination by an expert Commission. If shippers could challenge the filed rates by proceedings before a court, without prior resort to the Commission, different conclusions might be reached by different courts; and the pre-

vailing shippers would thereby obtain a rate preference as compared to unsuccessful shippers, which would violate the principle of uniform rates. See, *e. g., Texas & Pac. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 440–441; *Baltimore & Ohio R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481, 493–495; *Mitchell Coal & Coke Co.* v. *Pennsylvania R. Co.*, 230 U. S. 247, 255–260. Of course a preliminary determination by the Commission would have little effect in achieving uniformity if its determination were subject to *de novo* review, and it was for that reason that the Court pointed out in *Mitchell Coal* the "conclusive" effect that would be accorded "administrative" findings of the Commission in any ensuing § 16 action.

But other decisions rendered by the Court during the same period indicate that it was not only in § 16 proceedings that the Commission findings would be conclusive, in the sense the Court was actually using that term. Under the original Act, failure to comply with any order of the Commission did not in itself entail any penalty. Commission orders were judicially enforceable at the instance of the Commission or any party in interest, and the Act provided that in an enforcement action "the findings of fact in the report of said Commission shall be prima facie evidence of the matters therein stated." Interstate Commerce Act, § 16, 24 Stat. 384 (1887), as amended, 25 Stat. 860 (1889). Though retaining the prima facie evidence provision for actions on reparation awards, the Hepburn Act of 1906 included no provision respecting the weight to be given Commission findings in nonreparation cases. Section 15 of the amended Act, however, made Commission orders, except orders for the payment of money, self-enforcing for purposes of incurring liability for penalties for noncompliance, unless such orders had been suspended or set aside by a court of competent jurisdiction. In *Interstate Commerce*

*Comm'n* v. *Illinois Central R. Co.*, 215 U. S. 452, a
suit to set aside a cease-and-desist order, the changes
effected by the Hepburn Act in making Commission
orders self-enforcing were interpreted as reducing the
scope of judicial review from that prevailing when Com-
mission orders were only prima facie evidence. The
Court stated it could consider whether the Commission
action exceeded constitutional power or right, whether
the administrative order was within the scope of author-
ity delegated, and whether the exercise of authority was
reasonable, but it could not "usurp merely administrative
functions by setting aside a lawful administrative order
upon our conception as to whether the administrative
power has been wisely exercised. Power to make the
order and not the mere expediency or wisdom of having
made it, is the question." 215 U. S., at 470. Through
frequent repetition, see *Interstate Commerce Comm'n* v.
*Union Pac. R. Co.*, 222 U. S. 541, 547–548; *Procter &
Gamble Co.* v. *United States*, 225 U. S. 282, 297–298, the
principles elaborated in *Illinois Central* gradually became
restated as a doctrine "that the findings of the Commis-
sion were made not merely *prima facie* but conclusively
correct in case of judicial review, except to the extent
pointed out in the *Illinois Central* and other cases . . . ,"
*United States* v. *Louisville & Nashville R. Co.*, 235 U. S.
314, 320. Accord, *Central R. Co.* v. *United States*, 257
U. S. 247, 256–257; *United States* v. *Illinois Central R.
Co.*, 263 U. S. 515, 525–526 and n. 7. See generally,
*Rochester Tel. Corp.* v. *United States*, 307 U. S. 125,
139–140. By a parallel development, the Court placed
increasing reliance in primary jurisdiction cases on the
"conclusive" effect of Commission orders as a factor dem-
onstrating that the requirement of preliminary resort to
the Commission on administrative questions would in-
deed further the statutory policy of uniform treatment.
Compare *Baltimore & Ohio R. Co.* v. *Pitcairn Coal Co.*,

215 U. S. 481, 494, with *Mitchell Coal & Coke Co.* v. *Pennsylvania R. Co.*, 230 U. S. 247, 258, quoted, *supra,* p. 590.

When *Mitchell Coal* and *Meeker* are read together against the background of the *Illinois Central* and *Louisville & Nashville* cases it becomes clear that Commission orders are fully reviewable in § 16 (2) suits, but Commission findings on questions required under the primary jurisdiction doctrine to be determined first by the Commission are conclusive in the same sense that such findings would be conclusive in suits to set aside the Commission's order. That is, findings on primary jurisdiction issues are to be reviewed by the Court on the administrative record under the familiar standards elaborated in direct review proceedings, while findings on other questions are subject to review under the prima facie evidence provision of § 16 (2), with the statutory rights of introducing evidence not before the Commission and obtaining a jury determination of disputed issues of fact.[6] Such an interpretation of § 16 (2)'s prima facie evidence provision is required if that provision is to be consonant with the primary jurisdiction doctrine. That interpretation seems to have been applied by the Court in *Pennsylvania R. Co.* v. *Weber,* 257 U. S. 85, 90–91; *Louisville & Nashville R. Co.* v. *Sloss-Shef-*

---

[6] Section 16 (2), of course, does not limit the carrier to introducing opposing evidence to rebut the prima facie effect of the Commission's order. It may also challenge the admissibility of the order on the grounds, for example, that the Commission did not afford the carrier a fair hearing or that the order was not based upon substantial evidence, *Spiller* v. *Atchison, T. & S. F. R. Co.,* 253 U. S. 117, 126. But if a Commission order containing findings on all matters essential to the shipper's recovery is admitted and the carrier produces no opposing evidence, the findings and order of the Commission may not be rejected by the jury and the shipper is entitled to judgment. *Meeker* v. *Lehigh Valley R. Co.,* 236 U. S. 434, 439; see *Pennsylvania R. Co.* v. *Jacoby & Co.,* 242 U. S. 89, 94 (dictum).

field Co., 269 U. S. 217; *News Syndicate Co.* v. *New York Central R. Co.*, 275 U. S. 179; *Adams* v. *Mills*, 286 U. S. 397, 409–410.[7] It is urged in the present case by the Commission and in a companion case by the Federal Maritime Commission, was accepted by the court below, 334 F. 2d, at 49, n. 12, and has been applied by several other lower federal courts, *New Process Gear Corp.* v. *New York Central R. Co.*, 250 F. 2d 569, 571–572 (C. A. 2d Cir. 1957), cert. denied, 356 U. S. 959; *Midland Valley R. Co.* v. *Excelsior Coal Co.*, 86 F. 2d 177, 181–182 (C. A. 8th Cir. 1936); *Baltimore & O. R. Co.* v. *Brady*, 61 F. 2d 242, 246, 248 (C. A. 4th Cir. 1932), rev'd on other grounds, 288 U. S. 448; *City of Danville* v. *Chesapeake & O. R. Co.*, 34 F. Supp. 620, 625, 627–628 (D. C. W. D. Va. 1940); *Hillsdale Coal & Coke Co.* v. *Pennsylvania R. Co.*, 237 F. 272, 275 (D. C. E. D. Pa. 1916). We adhere to that interpretation now.

## IV.

Having established that the carrier has ample opportunity to secure review in the enforcement action, we must now consider whether affording the carrier the alternative of bringing direct review proceedings pursuant to § 17 (9) would vitiate the congressional policy expressed in § 16 (2) of encouraging prompt payment of reparation awards. To effectuate that policy, Congress has provided for the shipper certain procedural and substantive benefits pertaining to venue, freedom from costs, prima facie effect of the Commission's order, and allowance of a reasonable attorney's fee. The Commission

---

[7] In *Louisville & Nashville R. Co.* v. *Sloss-Sheffield Co.*, 269 U. S. 217, the Court considered a carrier's statute of limitations defense on review of a judgment for the shipper in a § 16 (2) enforcement action. Accord, *Meeker & Co.* v. *Lehigh Valley R. Co.*, 236 U. S. 412. Thus, it would seem beyond question that respondents here could have presented in Thomson's New York action the defense on which they prevailed in the courts below.

contends that permitting the carrier to bring direct review proceedings will materially impair the benefits derived by the shipper from the procedural dispensations of § 16 (2). We conclude that although the degree of impairment would be less than that claimed by the Commission, it would nevertheless be substantial.

The Commission argument respecting venue, which we accept, proceeds as follows: Because the carrier may bring its § 17 (9) action as soon as the final Commission order is entered but the shipper's § 16 (2) suit must await passage of the date set for compliance, the carrier may file its suit first and thus obtain priority. Although the carrier's suit must be brought against the United States, 28 U. S. C. § 2322 (1964 ed.), the Commission and the shipper may intervene as of right, 28 U. S. C. § 2323 (1964 ed.), and the shipper will be under compulsion to do so to protect its interest since a decision setting aside the Commission's order would destroy the foundation of the enforcement action. In this way, the shipper will frequently be denied his choice of forum on the statutory violation issue as the § 17 (9) suit must be brought in the judicial district of the residence or principal office of the party bringing the suit, 28 U. S. C. § 1398 (a), which may be far removed from the district in which the shipper resides or through which the road of the carrier runs—alternatives that are open to the shipper under § 16 (2) and, being likely to offer a more convenient venue to the shipper, would frequently be the shipper's choice.

By a similar analysis the Commission also contends that a shipper forced to intervene in the carrier's § 17 (9) action would lose the advantages of freedom from costs and the right to a reasonable attorney's fee, since those rights are conferred only in the § 16 (2) action and not in § 17 (9) actions. But since both the § 16 (2) action and the § 17 (9) action may be heard and determined by

a single district judge when the reparation order is not accompanied by a cease-and-desist order, *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, 440–443; *Pennsylvania R. Co.* v. *United States,* 363 U. S. 202, it would be possible, apart from venue problems,[8] for the shipper to press its action in the same district as the carrier's action, either by an independent action to be consolidated with the carrier's action, Fed. Rule Civ. Proc. 42 (a), or by a counterclaim after intervention in the carrier's action, see *Switzer Bros., Inc.* v. *Locklin,* 207 F. 2d 483 (C. A. 7th Cir. 1953); 3 Moore, Federal Practice ¶ 13.05 (2d ed. 1964), 4 Moore, Federal Practice ¶ 24.17 (2d ed. 1963). Then to the extent that the shipper's costs and attorney's fees were attributable

---

[8] Venue of suits to set aside the Commission's order is limited by 28 U. S. C. § 1398 (1964 ed.) to the district in which the party bringing the action has its residence or principal office. Section 16 (2) provides for venue in the district where the shipper resides "or in which is located the principal operating office of the carrier, or through which the road of the carrier runs . . . ." As § 16 (2) does not expressly provide for venue in the district in which the carrier resides and that district may not coincide with one of the districts that are listed, it would appear that in some cases in which the carrier elects to file its § 17 (9) action in the district of its residence, rather than the district of its principal office, the district chosen by the carrier will not be one where the shipper could originally have brought suit. It was primarily similar venue problems that prompted enactment in 1964 of 28 U. S. C. § 1336 (b), which provides that exclusive jurisdiction of a § 17 (9) action to set aside a Commission order arising out of a primary jurisdiction reference to the Commission shall be vested in the referring court. 1964–2 U. S. Code Cong. and Admin. News 3235–3239. When the § 17 (9) action is filed first, however, venue difficulties are less likely to occur as the § 16 (2) venue provisions are in general broader than those applicable to § 17 (9) actions. In any event, venue objections may perhaps be overcome by transfer of the § 17 (9) action, 28 U. S. C. § 1404 (1964 ed.), or by application of the doctrine of waiver, see 3 Moore, Federal Practice ¶ 13.16, at p. 45 (2d ed. 1964) (venue of counterclaims by interveners).

to its § 16 (2) counterclaim or action the § 16 (2) advantages would clearly be applicable. And it would be arguable—an issue we do not decide—that the shipper would be entitled to the benefit of § 16 (2) as to all its costs and attorney's fees in the combined action.

Since the Commission believes that the scope of review of findings on primary jurisdiction issues would be the same regardless of whether review was sought in a § 16 (2) or a § 17 (9) action, it makes no claim that allowance of the direct review proceeding would undercut the prima facie evidence provision of § 16 (2).

In summary, the principal, if not sole, effect of permitting respondents' direct review proceeding would be to force on shippers the alternatives of either forgoing the opportunity to defend the Commission order or accepting the carrier's choice of a distant venue. The first alternative is obviously counter to the policy expressed in § 16 (2), and, as we have said, it is to be expected that shippers would elect to defend the Commission's order even at the expense of loss of their venue advantage. The importance of choice of venue in these actions should not be discounted. Since the record in the enforcement action is not limited to that made before the Commission, the shipper may desire to call witnesses or to introduce documentary evidence either in direct support of the Commission's order or in rebuttal to opposing evidence produced by the carrier, thus bringing into play those factors relating to the convenience of witnesses and the relative burden of making proof that make the choice of venue so important in other contexts. See *Mercantile National Bank* v. *Langdeau*, 371 U. S. 555; *Schnell* v. *Peter Eckrich & Sons, Inc.*, 365 U. S. 260.

## V.

But respondents contend that confining review to the enforcement action would introduce into the administra-

tion of the Act problems of greater severity and importance than any effect such a course might have in safeguarding the shipper's § 16 (2) privileges. Respondents note that under the doctrine of *Phillips Co.* v. *Grand Trunk Western R. Co.,* 236 U. S. 662, shippers who are not complainants before the Commission may nevertheless obtain the advantage of the Commission's reparation order as a basis for their own § 16 (2) action. It is argued that the enforcement court has no power to set aside the Commission order and, therefore, a decision upholding a carrier's attack on the Commission's order in one enforcement proceeding would not preclude another shipper from successfully invoking that order in a separate enforcement proceeding, thus resulting in disparate treatment of shippers contrary to the Act's objective of securing uniform rates.

It is of course true that the court may not formally set aside the Commission's order in an action in which neither the Commission nor the United States is a party. Cf. *United States* v. *Jones.* 336 U. S. 641, 651–653, 670–671; *Pennsylvania R. Co.* v. *United States,* 363 U. S. 202, 205. But we do not read *Phillips Co.* v. *Grand Trunk Western R. Co., supra,* to permit reliance by a nonparticipating shipper on the Commission's order when it has been disapproved in litigation between the complainant shipper and the railroad. In the *Phillips* case, the Commission had separately determined that challenged rates were unlawful and had issued a cease-and-desist order, which was sustained in an enforcement proceeding brought by the Commission. *Illinois Central R. Co.* v. *Interstate Commerce Comm'n,* 206 U. S. 441. Thereafter, some reparation claims were settled, and Phillips, which had not been a complainant before the Commission, commenced its reparation action. The Court reasoned that if Phillips could not rely on the Commission order, shippers prevailing before the Com-

mission would obtain a preference as compared to nonparticipating shippers. Therefore, the Court ruled that if:

"there was a finding of unreasonableness in the proceedings begun by others, [the nonparticipating shipper] could, if in time, present his claim, and await the result of the litigation over the validity of any order made at the instance of those parties. If it was ultimately sustained by the court as valid he would then be in position to obtain reparation from the Commission—or a judgment from a court of competent jurisdiction, on a claim that had been seasonably presented." 236 U. S., at 666.

The *Phillips* case thus contemplates that the suit of a nonparticipating shipper is to await the outcome of litigation over the validity of the Commission order and that the nonparticipating shipper may rely on the Commission's order only when the policy of uniformity will thereby be served.

It might still be argued that disparity in treatment of shippers would result in cases involving multiple complainants before the Commission. The several shippers could commence separate enforcement actions in different courts, and those courts might disagree concerning the validity of the Commission's order. But such conflicts could be completely avoided only by limiting review on the question of statutory violation to a single suit by a carrier to set aside the Commission's order, and the long and unvarying course of decisions permitting review in the enforcement court precludes our limiting review to § 17 (9) proceedings. *Southern R. Co.* v. *St. Louis Hay & Grain Co.*, 214 U. S. 297; *Arizona Grocery Co.* v. *Atchison, T. & S. F. R. Co.*, 284 U. S. 370; *Adams* v. *Mills*, 286 U. S. 397; *Brown Lumber Co.* v. *Louisville & N. R. Co.*, 299 U. S. 393; *Porter Co.* v. *Central Vermont R.*

*Co.,* 366 U. S. 272, 274, n. 6 (dictum). In any event, we do not believe that in practice such conflicts will frequently occur. If the first enforcement court to issue its decision sustains the Commission order, that decision will generally be accepted as persuasive authority by other courts. Such conflicts as do occur will be similar to those that may arise when, in a suit commenced in court under § 9, the primary jurisdiction doctrine is not applicable and the court is free to decide questions under the Act as an original matter; and such conflicts may ultimately be resolved here. If the first court to reach a decision strikes down the Commission order, it may do so on grounds permitting reconsideration of the matter by the Commission. When the primary jurisdiction doctrine requires initial decision by the Commission, it also precludes the court from redetermining the question itself should the Commission decision be defective. The proper course is to remand to the Commission, *Southern R. Co.* v. *St. Louis Hay & Grain Co.,* 214 U. S. 297, 302; *Louisville & Nashville R. Co.* v. *Behlmer,* 175 U. S. 648; compare *United States* v. *Jones,* 336 U. S. 641, 651–653, 670–671, with *United States* v. *Bianchi & Co.,* 373 U. S. 709, 718, which has continuing power to suspend or to modify its orders, Interstate Commerce Act § 16 (6), 49 U. S. C. § 16 (6) (1964 ed.). The carrier will naturally request the Commission to reopen the prior order as to all shippers. See *Baldwin* v. *Milling Co.,* 307 U. S. 478; but cf. *Gulf, M. & N. R. Co.* v. *Merchants' Specialty Co.,* 50 F. 2d 21 (C. A. 5th Cir. 1931). In some cases, however, a decision refusing to enforce the Commission's order will finally determine its validity as between the parties to that action without any necessity for a remand to the Commission. Here too the first adjudication will generally be persuasive and, if not, conflicting decisions may be reviewed in this Court. Finally, under the interpretation of §§ 16 (2) and 17 (9) that we elaborate below

the carrier may bring a direct review proceeding as a cross-action in the forum selected by a shipper, thus ensuring that the court will have power to affect the order itself and thereby maintain uniformity as between shippers.

## VI.

Recent decisions of this Court have recognized that Commission orders determining a "right or obligation" so that "legal consequences" will flow therefrom are judicially reviewable. *Pennsylvania R. Co.* v. *United States,* 363 U. S. 202, 205; *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 131, 132, 143. Such review "is equally available whether a Commission order relates to past or future rates, or whether its proceeding follows referral by a court or originates with the Commission." *Pennsylvania R. Co.* v. *United States, supra,* at 205. Under these established principles the order attacked in this case is unquestionably subject to review, and in *Pennsylvania R. Co.* v. *United States, supra,* and *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, similar orders were held reviewable in direct proceedings.

The question before us now, however, is not whether review is to be afforded but where that review is to occur. In the three preceding sections of this opinion we have established three conclusions that must serve as guideposts for our decision of that question. First, respondents have ample opportunity to secure review of the Commission's order through defense of the shipper's enforcement action. By contrast, the *Pennsylvania R. Co.* and *Interstate Commerce Comm'n* cases dealt with situations where the order in dispute could only be reviewed in § 17 (9) proceedings, and those cases thus do not control decision here. Second, allowing respondents the alternative of bringing direct review proceedings would substantially impair the shipper's § 16 (2) right to select a convenient venue. Third, contrary to respond-

ents' contention, limiting review to the enforcement action would not be likely to result in disparity in treatment of shippers. If, therefore, review can be limited to the enforcement forum selected by the shipper consistent with the language and history of the provisions establishing the direct review proceeding, we should adopt that course.

During the first 19 years of the Commission's existence its orders were not reviewable through direct proceedings. Until 1906, noncompliance with a Commission order did not expose a carrier to immediate sanctions; an order was enforceable only after judicial proceedings in which the carrier could challenge its validity. The Hepburn Act imposed penalties of $5,000 a day for violation of Commission orders and "[t]he statutory jurisdiction to enjoin and set aside an order was granted in 1906, because then, for the first time, the rate-making power was conferred upon the Commission, and then disobedience of its orders was first made punishable," *United States* v. *Los Angeles R. Co.,* 273 U. S. 299, 309; see also 40 Cong. Rec. 5133 (remarks of Senator Foraker). Thus the genesis of the direct review proceeding was the desire to afford an injunctive remedy for persons faced with the threat of irreparable injury through exposure to liability for mounting penalties without any other opportunity for judicial review until the Commission or some interested party should choose to commence enforcement proceedings. Compare *Ex parte Young,* 209 U. S. 123, 147–148. The essentially equitable nature of the direct review proceeding was remarked in early cases denying review of "negative orders" that did not command any action by the carrier and therefore did not threaten the carrier with any sanctions. Compare *United States* v. *Los Angeles R. Co.,* 273 U. S. 299, with *Rochester Tel. Corp.* v. *United States,* 307 U. S. 125. Similarly, as the per diem penalties do not apply to non-

compliance with orders for the payment of money, two of the three courts to have considered the issue presented in the case at bar denied carriers direct review on the ground that no equitable cause of action had been stated. *Pittsburgh & W. V. R. Co.* v. *United States,* 6 F. 2d 646, 648–649 (D. C. W. D. Pa. 1924); *Baltimore & O. R. Co.* v. *United States,* 12 F. Supp. 261, 263 (D. C. D. Del. 1935), appeal dismissed, 87 F. 2d 605 (C. A. 3d Cir. 1937); contra, *Southern R. Co.* v. *United States,* 193 F. 664 (Commerce Ct. 1911). And decisions sustaining direct review of reparation orders have stressed the absence of alternative means for obtaining review—in equity terms, inadequacy of remedies at law. See, *supra,* at pp. 587–588.

As the principles stated at the beginning of this section demonstrate, the test of reviewability is no longer pregnant with the concept of irreparable injury to the same extent as when the negative order doctrine held sway, and we do not mean to resurrect the strict equity approach. This history nevertheless establishes that the main concern of Congress in creating the direct review proceeding was with orders that were "self-enforcing" in the sense of exposing recalcitrant carriers to substantial monetary penalties. The legislative history permits absolutely no inference that Congress intended to undercut the shipper's remedies in the enforcement action. To the contrary, the Hepburn Act simplified those enforcement procedures so as to provide additional assistance to shippers. H. R. Rep. No. 591, 59th Cong., 1st Sess., p. 5; 40 Cong. Rec. 2256 (remarks of Congressman Hepburn). Moreover, the equitable nature of the direct review proceedings certainly affords ample basis for requiring the direct review court to defer its proceedings pending the outcome of the enforcement action, a course that is consistent with the legislative history of the direct

review proceeding and that will maximize the remedial purposes of § 16 (2).

Lest there be any misunderstanding, we emphasize that our reasons for finding the direct review proceeding unavailable in a case such as this where the carriers began that proceeding in a forum other than that selected by the shipper for its enforcement action are inapplicable when the direct review proceeding is brought as a cross-action in the enforcement court.[9]  Obviously allowance of the cross-action will not impair the shipper's venue right.  And we think that the § 16 (2) provisions respecting court costs and attorney's fees unquestionably would be applicable to the whole of the combined action in such a case.  The Commission argues, nevertheless, that reparation orders respecting past rates are not of sufficient general importance to require their defense by the United States and the Commission, and that the direct review proceeding should not be permitted regardless of the court in which it is brought.  That apparently is not the view of Congress, however, for when it provided in 1964 that review of Commission orders entered on reference of primary jurisdiction issues should be had only in the court making the reference, 28 U. S. C. §§ 1336 (b) and 1398 (b) (1964 ed.), it did so by placing jurisdiction and venue of the direct review proceeding in

---

[9] "Except as otherwise provided by law," 28 U. S. C. § 1398 (a) (1964 ed.), quoted, *supra*, n. 3, limits venue of direct review proceedings to the judicial district of the residence or principal place of business of the party bringing the action.  Since we interpret § 16 (2) as precluding a carrier from bringing an enforcement action in any court but the enforcement court, that section provides venue for the carrier's cross-action under the "except as otherwise provided by law" provision of § 1398 (a).  In the rare cases when the enforcement action is brought in state, rather than federal, court it will of course not be possible for the carrier to bring a § 17 (9) cross-action.

that court, see generally S. Rep. No. 1394, 88th Cong., 2d Sess. (1964), in 1964–2 U. S. Code Cong. and Admin. News 3235, rather than by providing for review as an incident of the original action. See also Brief for the United States in *Pennsylvania R. Co.* v. *United States* (No. 451 O. T. 1959), 7–9, 21–22. As we indicated in the preceding section, in some cases there will be some advantage for purposes of assuring the uniform application of the Act in the courts having jurisdiction to directly affect the Commission's order, and we see no justifiable reason for preventing the carrier from bringing the United States into the enforcement court should it so desire.

The proceeding before us, however, was not brought in the enforcement court. Indeed, proceedings in the latter court have been deferred pending the outcome of this case. For the reasons stated herein, the District Court erred in entertaining respondents' action and the judgment of the Court of Appeals sustaining the District Court must be

*Reversed.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE BLACK took no part in the consideration or decision of this case.